1

2

3

4                                                          *E-filed 5/19/06*

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

**United States District Court**
For the Northern District of California

12   CHUCK BROWNING,                          No. C04-01463 HRL

13            Plaintiff,                       **INTERIM ORDER ON JOINT MOTION**
                                               **FOR CERTIFICATION OF TENTATIVE**
     v.                                        **SETTLEMENT CLASS AND**
14                                             **PRELIMINARY APPROVAL OF**
     YAHOO! INC., CONSUMERINFO.COM,            **PROPOSED SETTLEMENT**
15   INC., and EXPERIAN NORTH AMERICA,
     INC.,
16
              Defendants.
17   _____/

18

19                                  **INTRODUCTION**

20          On February 28, 2006, the parties filed a "Joint Motion for Certification of Tentative

21   Settlement Class, Preliminary Approval of Proposed Settlement, Approval and Direction of the

     Notice Plan, Appointment of Class Counsel, and Appointment of Settlement Administrator."

22          The court held a preliminary approval hearing on May 8, 2006, at which counsel for the

23   parties appeared, in addition to several non-parties who have taken an interest in this case.[1]

24          Pursuant to the papers submitted, and the discussion held at the hearing, the court issues

25   the following interim order.

26   //

27

28

     _____

           [1]One of those non-parties, plaintiffs in a case pending in the Central District of California titled *Millett*
     *v. Experian Information Solutions*, case no. SACV-05-00879-JVS, seek intervention in this matter.  Their
     motion has been noticed for hearing on June 13, 2006.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23(e)(1)(A) requires judicial review and approval of any settlement of a certified class action. At the preliminary fairness stage, the court must assess the validity of the settlement class pursuant to Fed. R. Civ. P. 23(a) and (b), and evaluate the fairness, reasonableness and adequacy of the settlement agreement pursuant to Fed. R. Civ. P. 23(e).

Although the court's role in reviewing a proposed settlement is critical, it is also a limited one. The court does not have the ability to "'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628, 630 (9th Cir.1982). The court may, however, voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it. Manual for Complex Litigation (Fourth) § 21.61 (2004).

**DISCUSSION**

At the preliminary fairness hearing, the court pointed out several areas of the proposed settlement that it found problematic—principally, the proposed class definition and the scope of the release. For further guidance to the parties, and based upon currently available information, this interim order is intended to explain the court's concerns in greater detail. It also sets out specific questions that the court invites the parties to address. In attempting to meet the court's concerns, the parties might—at their election—consider amending some of the language in their proposed settlement documents. Depending on the parties' response to this order, the court reserves the option to vacate the submission of the current motion and schedule a further preliminary approval hearing.

**A.     The Class Definition**

Ignoring certain exclusions not pertinent to this discussion, the proposed class definition is:[2]

---

[2]The parties represent that the number of individuals falling within this definition is approximately ten million.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

[A]ll natural persons in the United States who, between June 17, 1998 and the date on which the court grants preliminary approval to this proposed settlement agreement, entered into an agreement over the internet with ConsumerInfo or any Experian entity to purchase any Credit Check, Credit Check Monitoring, Credit Manager (including Yahoo! Credit Manager), Triple Alert, or Triple Advantage credit-monitoring product (and/or any credit score sold on a website also selling any of the foregoing credit-monitoring products) and paid ConsumerInfo or any Experian entity for that credit monitoring product (and/or such a credit score) but did not later obtain complete refunds from any source of the full amount paid for that credit-monitoring product (and/or credit score).

"Experian Entity" or "Experian Entities" shall refer to any company that is a subsidiary, parent, corporate affiliate, or division of Experian North America, Inc., and shall also include CreditExpert, L.L.C.

*See* Mem. in Supp. of Joint Mot. for Certification, Ex. 1 at 6.

From the court's perspective, the parties so far have not provided an adequate explanation of this class definition.  It appears to be quite different from the class definition pled in plaintiff's Second Amended Complaint,[3] as well as the one under consideration *Helms* case,[4] yet the parties assert it is "nearly identical."  There were reportedly three million members in the proposed *Helms* class, and now this court is told that the proposed settlement class has ten million members.  (Where did the seven million people come from?)  The parties assert that this definition is narrower than the previous two because it actually provides the names of the products purchased rather than using terms such as "credit repair services."  So far, the court is unconvinced about this assertion.

    1.      Compare and contrast, and explain why the definition of the settlement class  is "narrower" than the two prior iterations?"

    2.      Why does it not mention CROA?

    3.      Describe the "credit-monitoring product[s]" specifically mentioned.

---

[3]"Plaintiff brings this action individually and as a class action . . . on behalf of an opt-out class defined as follows: (A) All persons in the Untied States who purchased Yahoo! Credit Manager; and (B) All persons in the United States who purchased credit related services, and which services were managed, serviced, and/or billed by CIC."  *See* Second Amended Complaint at 14.

[4]"Plaintiff proposes the following class: All persons in the United States who purchased any credit repair service from Defendant since June 1, 1998 and who (1) paid any money or other valuable consideration to Defendant in advance for such service before defendant fully performed the service, (2) did not receive disclosures required by 15 U.S.C. § 1679c, (3) did not receive the written contract required by 15 U.S.C. § 1679d, and/or (4) did not receive a cancellation form and other information required by 15 U.S.C. § 1679e." *Helms v. ConsumerInfo.Com*, no. 03-HS-1439-M (N.D. Ala. March 16, 2005) (order denying class certification).

**United States District Court**
For the Northern District of California

4. Why does this definition refer to "products" when the two prior ones said "services," especially in view of the use of the word "service" in CROA and the importance that CIC attached to that word in conjunction with its defense in the *Helms* action.[5]

5. What is the definition of "credit-monitoring product?"

6. Who are "Experian Entity" corporate affiliates?  Might that include Equifax or TransUnion?

7. Why is someone who bought a "credit score" included in the class, but someone who purchased a credit report (presumably) is not?

**B.      Scope of the Release**

While the court feels it is important to know exactly who is in the class, it is even more important to know *who* and—crucially—*what* is being released.  The language of the proposed release appears to be both vague and extremely sweeping:

> Following the Court's final approval of this Settlement Agreement, the parties shall take all appropriate steps to obtain entry of the Final Order and Judgment dismissing the Litigation with prejudice and without further costs.  The Final Order and Judgment will dismiss with prejudice any and all claims that arose during the class period and that the Named Plaintiff and Settlement Class Members could assert based on: (1) violations of the Credit Repair Organizations Act, (2) violations of any other federal or state statute or regulation that applies to credit repair, and (3) any legal or equitable claim relating to credit repair, including (a) unjust enrichment and money had an received, (b) constructive trust, and (c) conspiracy.

> Upon the Effective Date, ConsumerInfo, Experian Entities, and Yahoo!, and their present or former officers, directors, employees, attorneys, agents, administrators, successors, assigns, subsidiaries, partners, affiliates, sister corporations, parents, divisions, and predecessors, shall forever be released and discharged from any and all claims (arising during the class period) that the Named Plaintiff and Settlement Class Members had based on:(1) violations of the Credit Repair Organizations Act, (2) violations of any other federal or state statute or regulation that applies to credit repair, and (3) any legal or equitable claim relating to credit repair, including (a) unjust enrichment and money had and received, (b) constructive trust, and (c) conspiracy.  In addition, upon the Effective Date, this Settlement Agreement shall also serve to release and discharge any and all claims (arising during the class period) that the Named Plaintiff or Settlement Class Members might have against any entity that, or individual who, during the class period, was ConsumerInfo's or an Experian Entity's marketing partner or marketing affiliate that advertised, promoted,

---

[5] *See Helms v. ConsumerInfo.Com*, no. 03-HS-1439-M (N.D. Ala.).  The proposed settlement class here would swallow up the *Helms* class, and an approved settlement here will result in a settlement of *Helms* as well.

**United States District Court**
For the Northern District of California

marketed, provided, and/or sold the credit scores or the credit-monitoring products referred to in the definition of the Settlement Class at Section II.N above.  Upon the Effective Date, no default by any person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection therewith shall affect the dismissal of the Litigation, the res judicata effect of the Final Order and Judgment, the foregoing releases, or any other provision of the Final Order and Judgment; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all parties.

*See* Mem. in Supp. of Joint Mot. for Certification, Ex. 1 at 12-13.

1.    The language "violations of any other federal or state statute or regulation that applies to credit repair" seems vague.  "Credit repair" is not defined.  Neither is "applies."  A statute or regulation may "apply" to credit repair (as well as a host of other things) and yet not be *about* credit repair.  For example, does the release cover violations of California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750-1784, which does not specifically discuss credit repair, but may well "apply" to companies selling credit repair services?[6]

2.    The language "any legal or equitable claim relating to credit repair" suffers the same apparent infirmity.  The word "relating" seems even less precise than the word "applies" in the phrase just preceding.  Relates in what way?  And, what is the basis of the legal or equitable claim?  From credit repair activities or representations?  Based on a violation of a credit repair statute or regulation, or simply common law?[7]

3.    Define "marketing partner" or "marketing affiliate."  Are they being released from their derivative liability (because of their relationship to Experian) or does

---

[6]The ambiguity of the release language is exemplified in the *Millett* case, noted above.  The *Millett* plaintiffs are suing Experian for violations of the CLRA for deceptive marketing of credit services designed to protect against identify theft.  The Millett plaintiffs also bought defendants' Credit Manager product, but their claims focus on the "identify theft aspects" of the product.  While the *Browning* parties may not have intended the release to cover claims such as those of the Milletts, the language could be read to do so.

[7]Of course, the court cannot require the parties to use language that it thinks desirable, and it acknowledges the considerable difficulty in crafting an appropriately tailored release.  Would there be unacceptable or unduly restrictive interpretations from a release that covered: liability from a statute or regulation regulating the service of improving a consumer's credit record, history, or rating, as well as legal or equitable claims based on the same service, including the service of providing advice or assistance with regard to improving credit record, history, or rating?

5

**United States District Court**
For the Northern District of California

the release extend to their potentially primary liability?  Who are these entities and what do they do?

4.    The court understands that Experian offers for sale to consumers credit data that comes not only from its own files but also from Equifax and TransUnion (independent companies engaged in the same type of business as Experian).  If so, how (or, to what extent) would the release apply to these other two companies?  A clarification may be important because the court understands that those companies (and related others) are defendants in putative class actions alleging *they* are in violation of CROA.[8]

**C.    Other Considerations**

With respect to remedial relief (*see* Mem. in Supp. of Joint Mot. for Certification, Ex. 1 at 14-19) CIC and the Experian Entities agree to delete certain language from their web sites and not to make certain enumerated statements or references.  Generally speaking, they are going to avoid talking about credit repair.  If that is the case, are they also going to stop paying Google (and, perhaps, other search engine providers) for keywords designed to attract consumers who are interested in credit repair?  If not, why not?  *See* Brief of Plaintiff-Appellee at 31-33, *Helms v. ConsumerInfo.com*, no. 05-13335-HH (11th Cir.).

//

//

//

//

//

//

---

[8] *See, e.g., Hillis v. Equifax Consumer Services, Inc*, no. 04-3400-BBM (N.D. Ga.); *Slack v. Fair Isaac Corporation*, no. 05-00257 MHP (N.D. Cal.); and *Townes v. TransUnion, LLC*, no. 04-1488 JJF (D. Del.).   Just prior to the hearing on this motion, the court received a correspondence from interim class counsel in these cases.  Counsel informed the court that he had concerns over the breadth of the proposed *Browning* release, and requested that the court require the insertion of language explicitly stating that the *Browning* release does not extend to any claims during the class period against Fair Isaac Corporation, Equifax, Inc., Trans Union, LLC, Truelink, Inc., or any of their present or future subsidiaries.  The court sees this prospect as treating the symptoms rather than the problem itself.  If the release is so vague (or broad) that it requires such qualifying language, then the release is probably too vague (or broad).

**D.      Conclusion**

The court has not yet received the requested declarations of Messrs. Browning and Helms, and there may be other matters or information of which the court may subsequently become aware.  Nonetheless, the issues raised in this order are those now on the court's mind, and it looks forward to a thoughtful, full response from the parties by June 9, 2006.

IT IS SO ORDERED.

Dated: 5/19/06                                      ___/s/ Howard. R. Lloyd_____
                                                   HOWARD R. LLOYD
                                                   UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

7

THIS SHALL CERTIFY THAT NOTICE WILL BE SENT TO:

| | |
|---|---|
| Marc Stephen Carlson | mscarlson@jonesday.com, tmmead@jonesday.com |
| Hanley Chew | hanley.chew@usdoj.gov, hanleychew@hotmail.com |
| Bryson Reid Cloon | bryson@cloonlaw.com |
| John W. Edwards | jwedwards@jonesday.com, |
| Gordon John Finwall | Gordon@Finwalllaw.com, finwall@sbcglobal.net |
| Richard Joseph Grabowski | rgrabowski@jonesday.com, |
| Peter A. Grammas | pgrammas@lowegrammas.com, |
| Clay Lowe | clowe@lowegrammas.com |
| David Clark Zucker | zuckerlaw@sbcglobal.net, dkzucker@sbcglobal.net |

\* Counsel are responsible for providing copies of this order to co-counsel who have not registered for e-filing under the court's CM/ECF program.

Date:   5/19/06

                                                    /s/ RNR
                              Chambers of Magistrate Judge Howard R. Lloyd

**United States District Court**
For the Northern District of California