1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-filed 12/27/06*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CHUCK BROWNING,
individually and on behalf of
all persons similarly situated,

Plaintiff,

v.

YAHOO! INC.;
CONSUMERINFO.COM, INC.; and
EXPERIAN NORTH AMERICA,
INC.;

Defendants.

Case No. C04-01463 HRL

**ORDER CERTIFYING TENTATIVE
SETTLEMENT CLASS,
PRELIMINARILY APPROVING
PROPOSED AMENDED
SETTLEMENT, APPROVING AND
DIRECTING THE NOTICE PLAN,
APPOINTING CLASS COUNSEL,
AND APPOINTING SETTLEMENT
ADMINISTRATOR**

The parties and their respective counsel have entered into an Amended Settlement

Agreement to settle and dismiss the above-captioned litigation on a class-action basis,

subject to the Court's approval, and have filed a Joint Motion For Certification of

Tentative Settlement Class, Preliminary Approval of Proposed Amended Settlement,

Approval and Direction of the Notice Plan, Appointment of Class Counsel, and

Appointment Of Settlement Administrator and a supporting memorandum.

The parties' Amended Settlement Agreement supersedes their original agreement

dated February 14, 2006, which has no further force and effect; and the parties' first

preliminary-approval motion, filed on February 28, 2006, has now been withdrawn.  On

May 8, 2006, this Court held a hearing on that first preliminary-approval motion.  This

Court thereafter issued three interim orders, on May 19, July 6, and August 10, 2006.

This Court also issued an order on August 10, 2006, denying the plaintiffs in a separate

class action leave to intervene in this case.  On March 16, June 9, and July 21, 2006, the

parties made joint filings to supplement their original settlement and in response to the

1    Court's first and second interim orders.  In its Second Interim Order of July 6, 2006, this

2    Court determined that it was satisfied with the response it had received to its questions

3    with respect to the class definition.  Second Interim Order On Joint Mot. For Certification

4    Of Tentative Settlement Class & Prelim. Approval Of Proposed Settlement, Etc., Docket

5    No. 126 at 2:3-4.  In its Third Interim Order of August 10, 2006, this Court determined

6    that its questions about the scope of the release were also satisfied by new proposed

7    wording, and the Court invited the parties to submit a new motion for preliminary

8    approval of their amended settlement.  Third Interim Order On Joint Mot. For

9    Certification Of Tentative Settlement Class & Prelim. Approval Of Proposed Settlement,

10   Etc., Docket No. 130 at 2:12-13.

11          After careful consideration of the parties' Amended Settlement Agreement and

12   their present Joint Motion and accompanying exhibits, the Court grants the motion.

13                        **Certification of Tentative Settlement Class**

14          The parties have jointly moved the Court to resolve this case as a tentative

15   settlement class.  In order to certify a settlement class, the requirements of Rule 23 must

16   generally be satisfied.  *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.

17   1998) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  However, in

18   assessing the Rule 23 requirements, the Court may consider that there will be no trial.

19   *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class

20   certification, a district court need not inquire whether the case, if tried, would present

21   intractable management problems . . . for the proposal is that there be no trial.").

22          Although this Court has not yet considered class certification, the federal district

23   court in *Helms v. ConsumerInfo.com, Inc.*, No. CV-03-HS-1439-M (N.D. Ala.), has

24   issued a decision in a proposed class action brought by the same attorneys on behalf of

25   substantially the same group of people as here against ConsumerInfo.com, Inc.

26   ("ConsumerInfo"), one of the defendants in this case.  The *Helms* court found that all of

27   the requirements of Federal Rule of Civil Procedure 23(a) were met, *Helms v.*

28   *ConsumerInfo.com, Inc.*, 236 F.R.D. 561, 564-66 (N.D. Ala. 2005), and that the

predominance requirement of Federal Rule of Civil Procedure 23(b)(3) was also met, *id.* at 566-67.  The court denied class certification, however, because it concluded that class litigation would not be a superior method of adjudication when damages, if aggregated by the class procedure, could be "'grossly disproportionate to the conduct at issue,'" *id.* at 568 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004)).  The *Helms* court concluded that a class trial would lead to unfair and undesirable results "[g]iven that Defendant does not offer fraudulent services, considering that Plaintiff has exhibited little if any actual damages, and with an eye to the likelihood that class damages would be disproportionately large when compared to Defendant's actual conduct."  *Id.* at 569-70.  Following the denial of class certification in *Helms*, the same counsel amended the complaint in *Browning* to add ConsumerInfo and Experian North America, Inc. as defendants in the *Browning* case.

This Court holds that the requirements of Rule 23(a) are met.  The tentative settlement class, which is estimated to include an approximate minimum of 10 million individuals, meets the numerosity requirement, as joinder of all members would be impractical.  The commonality requirement of Rule 23(a) is also met, because there are questions of law or fact common to the class, and the typicality requirement is met because the named plaintiff's claims are typical of the class.

This Court further holds that the named plaintiff, Chuck Browning, is an adequate class representative under Rule 23(a)(4).  In determining that Browning is an adequate representative, the Court has considered:  (1) whether the representative plaintiff and his counsel have any conflict of interest with other class members; and (2) whether the representative plaintiff and his counsel will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at 1020.

The Court finds that Browning and Class Counsel do not have conflicts of interest with other class members that would defeat adequacy of representation in the context of the proposed settlement class and the notice to be provided.  Each settlement class member will benefit from the remedial website changes, and each is eligible to receive the

same in-kind relief, which permits the class member to choose either a credit score or 60 days of credit monitoring.  *See Hanlon*, 150 F.3d at 1021 (adequacy was met when the settlement was "narrowly circumscribed" and each class member was treated identically; "[g]iven these careful precautions and safeguards, no improper conflict of interest existed").

Furthermore, Browning and Class Counsel have shown appropriate vigor in prosecution of the class claims.  Browning's counsel declared that he conducted the initial factual investigation and engaged in significant discovery in *Helms*, including document requests and production, interrogatories, and the taking and defending of depositions.  It is represented that in the course of discovery ConsumerInfo produced millions of emails and many thousands of pages of documents, and shipped more than 100,000 recordings of phone calls from overseas to the United States.  Furthermore, the parties have also conducted discovery in *Browning*, including responses to interrogatories, and the production of documents, as well as engaging in motion practice.  The parties stipulated that all of the discovery conducted in *Helms* would be treated as if it had also been conducted in *Browning*.  *See Hanlon*, 150 F.3d at 1022 (finding "counsel's prosecution of the case sufficiently vigorous to satisfy any Rule 23(a)(4) concerns").  Accordingly, the Court is satisfied that Browning and Class Counsel are adequate representatives of the tentative settlement class under Rule 23(a)(4).

With respect to Rule 23(b)(3), the requirements of predominance and superiority are intended to cover cases "'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem*, 521 U.S. at 615.  The Court holds that, for the tentative settlement class, common questions predominate over individualized issues.

This Court also holds that the tentative settlement class is superior to individual lawsuits.  The concern of the *Helms* court that aggregation of claims for trial could bring about the undesirable result of damages disproportionate to Defendants' conduct simply is

1  not applicable here in the context of the proposed settlement class, where the relief is

2  agreed upon and no trial will occur.  *See Amchem*, 521 U.S. at 619-20.  Consequently, the

3  Court finds that the requirements of Rule 23(b)(3) are met by the proposed settlement

4  class action.

5          Based on the foregoing paragraphs, the Court finds that the requirements for

6  certification of a tentative settlement class are satisfied.

7          For the sole purpose of determining:  (i) whether this Court should finally approve

8  the proposed settlement as fair, reasonable, and adequate; and (ii) whether the Court

9  should dismiss the litigation with prejudice, the Court hereby certifies a tentative

10  settlement class composed of Settlement Class Members, under Federal Rule of Civil

11  Procedure 23(e), as follows:

12          1.      **Settlement Class Members:**  "Settlement Class Member" or "Settlement

13  Class" shall mean and refer to all natural persons in the United States who, between

14  June 17, 1998 and the date on which the Court grants preliminary approval of this

15  proposed Amended Settlement Agreement, entered into an agreement over the Internet

16  with ConsumerInfo or any Experian Entity to purchase any Credit Check or Credit Check

17  Monitoring (which were formerly known as CreditCheck® Monitoring Service), Credit

18  Manager (including Yahoo! Credit Manager), Triple Alert, or Triple Advantage credit-

19  monitoring product (and/or any credit score sold on a website also selling any of the

20  foregoing credit-monitoring products) and paid ConsumerInfo or any Experian Entity for

21  that credit-monitoring product (and/or such a credit score) but did not later obtain

22  complete refunds from any source of the full amount paid for that credit-monitoring

23  product (and/or credit score).  "Settlement Class Member" or "Settlement Class,"

24  however, shall not include the Exclusions from the Settlement Class.

25                  a.      **"Experian Entity"** or **"Experian Entities"** shall refer to Experian

26  North America, Inc. and to any company that is a subsidiary, parent, corporate affiliate, or

27  division of Experian North America, Inc., and shall also include Credit Expert, L.L.C.

28                  b.      **Exclusions from the Settlement Class:**  "Exclusions from the

Settlement Class" shall include:  Defendants' officers, directors, and employees;
Defendants' attorneys; Plaintiff's attorneys; Magistrate Judge Lloyd and the members of
his immediate family; anyone who enrolled in credit monitoring pursuant to a free trial
offer but never became a paying member of the credit-monitoring program; anyone who
was a named plaintiff (as opposed to a putative class member) in a lawsuit pending
against any of the Defendants as of the date of the order preliminarily approving this
Amended Settlement Agreement; and all persons who timely and validly request
exclusion from the Class.

     2.    **Settlement Class Representative:**  Chuck Browning is designated as the
settlement class representative for the tentative settlement class.

     3.    **Class Counsel:**  Having considered the work counsel has done in
identifying or investigating potential claims in the action; counsel's experience in
handling class actions, other complex litigation, and claims of the type asserted in the
action; counsel's knowledge of the applicable law; and the resources counsel will commit
to representing the class, the following attorneys are appointed Class Counsel under Rule
23(g)(1)(B) and (C):

> E. Clayton Lowe, Jr., Esq.
> Peter A. Grammas, Esq.
> Lowe & Grammas LLP
> Liberty Park
> 1952 Urban Center Parkway
> Birmingham, Alabama  35242.

     The foregoing certification of a tentative settlement class is conditional and without
prejudice to Defendants' rights to later oppose class certification for trial purposes if the
proposed settlement is terminated or not finally approved.

## Preliminary Approval of Proposed Settlement

     Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court will approve a
class-action settlement if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).
This Court's approval will "involve[] a two-step process in which the Court first
determines whether a proposed class action settlement deserves preliminary approval and

1    then, after notice is given to class members, whether final approval is warranted." *Nat'l*

2    *Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At this

3    first step of preliminary approval, the Court must conduct a *prima facie* review of the

4    relief and notice provided by the Amended Settlement Agreement, before the Court

5    orders notice sent to the tentative Settlement Class Members.  *See* DAVID F. HERR,

6    ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2005).

7        Turning to the specific terms of the settlement, the Court notes that Defendants

8    have agreed to offer Settlement Class Members two forms of relief:  remedial and in-

9    kind.  For remedial relief, as specifically described in subsections IV(C) and (D) of the

10   Amended Settlement Agreement, ConsumerInfo and the Experian Entities have agreed to

11   remove from those websites particular language that Plaintiff alleged placed Defendants

12   within the definition of a "credit repair organization" and subject to the requirements of

13   the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679.  (The Court is advised

14   that Defendant Yahoo! no longer offers Yahoo! Credit Manager, the product at issue in

15   this case.)  For in-kind relief, ConsumerInfo has agreed to offer Settlement Class

16   Members a choice of either a credit score or 60 days of credit monitoring.

17       Defendants have agreed to offer the remedial relief set forth in the Amended

18   Settlement Agreement, even though Defendants deny that they fall within the definition

19   of a "credit repair organization" under CROA, deny all of the claims alleged, and deny

20   that Plaintiff's claims could ever be certified as a class action for trial purposes.  The

21   *Helms* district court held Defendant ConsumerInfo was a "credit repair organization"

22   within the meaning of CROA.  But, recognizing that its decision was one of first

23   impression, the court certified it for interlocutory appeal to the Eleventh Circuit.  *Helms*

24   *v. ConsumerInfo.com, Inc.*, 436 F. Supp. 2d 1220, 1238 (N.D. Ala. 2005).  The Eleventh

25   Circuit accepted the interlocutory appeal, but subsequently stayed it at the parties'

26   request (on account of ongoing settlement negotiations).  *Helms v. ConsumerInfo.com,*

27   *Inc.*, No. 05-13335-W (11th Cir. Jan. 24, 2006).  This court's final approval of the

28

1   Browning settlement would result in the dismissal of the *Helms* appeal, so we would not

2   learn what the Eleventh Circuit's view would have been on the *Helms* decision.

3        In another recent CROA case, a Georgia district court denied plaintiff's motion for

4   summary judgment against a different defendant, holding that issues of genuine material

5   fact precluded finding that defendant to be a credit repair organization as a matter of law.

6   *Hillis v. Equifax Consumer Servs., Inc.*, No. 1:04-cv-3400-TCB, 2006 WL 2434078, at

7   *28 (N.D. Ga. Aug. 18, 2006) (holding that an issue of fact existed as to whether

8   defendants sold their products "'for the express or implied purpose' of improving a

9   consumer's credit record, credit history, or credit rating within the meaning of the

10  CROA").

11       In sum, this Court finds that the strength of this fundamental point of Plaintiff's

12  case — whether CROA applies — is uncertain.  Moreover, despite the open question

13  regarding whether Defendants would fall within CROA's definition of a "credit repair

14  organization," ConsumerInfo and the Experian Entities have agreed to delete or modify

15  particular language (specifically delineated in the Amended Settlement Agreement),

16  which Plaintiff had alleged made each Defendant a "credit repair organization" and

17  subject to CROA.  Upon implementation of that relief, the parties believe that neither

18  ConsumerInfo nor the Experian Entities will fall within the statutory definition of a

19  "Credit Repair Organization" under the CROA.  Defendant Yahoo! Inc. no longer offers

20  Yahoo! Credit Manager.  On balance, the Court finds the remedial relief to be fair,

21  reasonable, and adequate.

22       The second type of relief is in kind.  ConsumerInfo has agreed to offer, without

23  charge, to any eligible Settlement Class Member either a credit score or 60 days of credit

24  monitoring.  The foregoing settlement benefits will be provided in addition to any

25  promotional campaign Defendants are now running or plan to run.  The Court agrees

26  with the parties that Settlement Class Members are likely to be interested in a settlement

27  benefit of either a credit score or credit monitoring because the Settlement Class consists

28  of consumers who previously sought out and purchased a credit score or credit

1    monitoring on the Internet.  That they will have a choice of a benefit is a plus.  Thus,

2    each Settlement Class Member, with full knowledge, can make his or her own

3    assessment of the value of this proposed settlement.

4          Furthermore, the in-kind relief is reasonable in amount given the cost of similar

5    products offered for sale, and is considerable when aggregated over the more than 10

6    million Settlement Class Members.  True, some may view it as less attractive than a full

7    or partial refund to class members, but it is the court's recollection that defendants

8    adamantly refused to consider a settlement which included a refund.

9          The parties have also advised that Settlement Class Members who choose the 60-

10   day credit monitoring as their settlement benefit will be enrolled in that program and, if

11   they do not cancel their enrollment after using their benefit code to obtain the

12   credit-monitoring benefit but prior to the expiration of the 60-day settlement-benefit

13   period, they will be charged for the service at the then-applicable rate, which is currently

14   $9.95 per month, for each month that the membership continues.  This so-called

15   negative-option plan is the way credit monitoring is currently sold on ConsumerInfo's

16   website.  Pursuant to a consent order between ConsumerInfo and the FTC, ConsumerInfo

17   agreed to certain disclosure requirements imposed by the FTC for negative-option

18   marketing.  *FTC v. ConsumerInfo.com*, No. CV SACV05-801 AHS (MLGx), Stip. Final

19   J. (C.D. Cal Aug. 15, 2005).

20         The parties have also informed this Court about the objections the FTC recently

21   made to a negative-option provision contained in another pending class-action settlement.

22   *Chavez v. Netflix, Inc.*, No. CGC-04-434884 (Cal. Super. Ct. October 27, 2005).  In the

23   *Netflix* case, class members were to be given only one form of settlement benefit,

24   whereas in this case Class Members have a choice between two benefits—credit

25   monitoring or a credit score.  The defendants say here that their disclosures about the

26   negative option feature of one of the in-kind settlement benefits satisfies the FTC consent

27   decree.  This Court makes no such finding (it being for the FTC to say).  However, this

28   Court is satisfied that the negative option feature is fairly and reasonably disclosed and

9

1   that the offering of a choice of settlement benefits avoids the potential problem cited in

2   the *Netflix* case.

3        Here, the Defendants were not willing to agree to offer the credit monitoring as an

4   alternative form of in-kind relief (monitoring which has an approximate retail value

5   several times the value of a credit score), *unless* it was accompanied by this negative-

6   option provision.  Given that a Class Member's elective choice to take the credit

7   monitoring settlement benefit is accompanied by fair and reasonable disclosures about

8   the negative option provision, this Court will approve the proposed form of settlement

9   benefit.

10       The Court has carefully considered the release when determining the fairness of the

11  settlement for preliminary-approval purposes, and notes that the parties have revised the

12  original settlement agreement in order to avoid vague language and more exactly

13  delineate which entities will be released from liability for which types of activities.

14  Specifically, the Court finds to be fair and reasonable the following release:

15       "Upon the Effective Date,

16       1.      the Released Defendants shall forever be released and
         discharged from any and all legal or equitable claims (arising
17       on or before the Effective Date) that the Named Plaintiff and
         Settlement Class Members had based on any Released Party's
18       violation of the federal Credit Repair Organizations Act; and

19       2.      the Released Defendants shall forever be released and
         discharged from any and all legal or equitable claims (arising
20       on or before the Effective Date) that the Named Plaintiff and
         Settlement Class Members had based on any Released Party's
21       selling, providing or performing (or representing that such
         person can or will sell, provide, or perform) the service of
22       improving a consumer's credit record, history, or rating
         (including providing advice or assistance to the consumer with
23       regard to improving the consumer's credit record, history, or
         rating), where the stated basis of the claim is about
24       improvement of a consumer's credit record, history, or rating;
         and
25
         3.      the Released Marketing Partners or Marketing
26       Affiliates shall forever be released and discharged from any
         and all legal or equitable claims (arising on or before the
27       Effective Date) that the Named Plaintiff and Settlement Class
         Members had based on any Released Party's violation of the
28       federal Credit Repair Organizations Act, insofar as and to the

10

extent that the Released Marketing Partner or Marketing Affiliate advertised, promoted , marketed , provided and/or sold the credit scores or the credit-monitoring products referred to in the definition of the Settlement Class at Section II.Q; and

    4.    the Released Marketing Partners or Marketing Affiliates shall forever be released and discharged from any and all legal or equitable claims (arising on or before the Effective Date) that the Named Plaintiff and Settlement Class Members had based on any Released Party's selling, providing or performing (or representing that such party can or will sell, provide, or perform) the service of improving a consumer's credit record, history, or rating (including the service of providing advice or assistance to the consumer with regard to improving the consumer's credit record, history, or rating), where the stated basis of the claim is about improvement of a consumer's credit record, history, or rating, insofar as and to the extent that the Released Marketing Partner or Marketing Affiliate advertised, promoted, marketed, provided, and/or sold the credit scores or the credit-monitoring products referred to in the definition of the Settlement Class at Section II.Q."

The Court has also carefully considered the definitions accompanying the releases, and the Court finds the following definitions to be fair and reasonable:

"Released Parties" shall mean Released Defendants and Released Marketing Partners or Marketing Affiliates, which are being released from specified claims by Section III.H of this Amended Settlement Agreement.

The term Released Parties does not include Fair Isaac Corporation, Equifax, Inc., Trans Union LLC, or Truelink, Inc. The parties to this Amended Settlement Agreement understand that those four entities are defendants in other pending lawsuits involving CROA claims, and those entities are not affected by the Release in this Amended Settlement Agreement.

"Released Defendants" shall mean ConsumerInfo, Experian Entities, and Yahoo!, and their present or former officers, directors, employees, attorneys, agents, administrators, successors, assigns, subsidiaries, partners, corporate affiliates, sister corporations, parents, divisions, and predecessors.

"Released Marketing Partners or Marketing Affiliates" shall mean any entity which, or individual who, during the class period, was ConsumerInfo's or an Experian Entity's marketing partner or marketing affiliate that advertised, promoted, marketed, provided, and/or sold the credit scores or the credit-monitoring products referred to in the definition of the Settlement Class at Section II.Q.

11

1
2
3

               **"Experian Entity"** or **"Experian Entities"** shall refer to
Experian North America, Inc. and to any company that is a
subsidiary, parent, corporate affiliate, or division of Experian
North America, Inc., and shall also include CreditExpert,
L.L.C.

4       Furthermore, in evaluating the fairness of the settlement and the relief it offers to

5  the Class Members, the Court has considered not only the risks to Plaintiff and the

6  Settlement Class Members of continued litigation on the merits (including the still-open

7  question of whether CROA applies to Defendants), but also the risk that class-action

8  status would not be appropriate or could not be maintained throughout a trial.  When the

9  class-certification issue was decided in *Helms*, the district court denied class certification.

10  Although this Court need not decide whether certification of a class for purposes of a trial

11  would be appropriate in this case, this Court earlier in this litigation expressed its

12  skepticism about whether a class would be permitted, when Class Counsel has already

13  unsuccessfully litigated the class-certification issue on behalf of a substantially similar

14  proposed class in *Helms*.  *See* Order Granting Pl.'s Mot. for Leave to File Second Am.

15  Compl., Docket No. 77 at 5:10-12.

16       Finally, this case and the *Helms* case that proceeded at the same time have gone

17  past the initial stages of litigation, leaving the parties and the Court well placed to

18  evaluate the risks of continued litigation and the benefits of the settlement.  *See Nat'l*

19  *Rural Telecomm. Coop.*, 221 F.R.D. at 528 ("A settlement following sufficient discovery

20  and genuine arms-length negotiation is presumed fair.").

21       In conclusion, based on the foregoing findings, the terms and procedures set forth

22  in the Amended Settlement Agreement are hereby preliminarily approved as fair,

23  reasonable, and adequate, subject to further consideration at the Final Fairness Hearing

24  described below.

25                    **Approval of Notice**

26       The Court has evaluated the adequacy of the proposed notice program.  It is

27  extensive, multifaceted, and innovative.  It employs email techniques that the Court finds

28  to be particularly suitable in this case, where Settlement Class Members' allegations arise

from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar and comfortable with email and the Internet. Under the terms of the Amended Settlement Agreement, the Email Notice will direct each Class Member to the official Settlement Website, where they may access complete notice information, as well as other materials concerning this lawsuit. The Court finds that the Email Notice will provide key information, but in a clear and concise form that will reduce the chances of the emails being blocked by spam filters. For that reason, the Email Notice will not include an attachment of the Long-Form notice, since attachments often trigger spam filters. Moreover, in the event that an Email Notice sent to a Settlement Class Member is bounced back as undeliverable, the Amended Settlement Agreement provides for notice by standard mail. The notice program also has comprehensive and adequate procedures for identifying the names, email addresses, and postal addresses for Class Members, so that individual notice will be directed to all Class Members who can be identified through reasonable effort, as required by Rule 23(c)(2)(B). In addition, the notice program provides for adequate notice to any Class Member to whom individual notice cannot be directed, through publication in one daily issue and one weekend issue of the national edition of *USA Today*. The notice program also provides a toll-free number that a Class Member can call for more information. Furthermore, the parties have proposed to use The Garden City Group, Inc., as The Browning Settlement Administrator. The Court has reviewed materials about the Garden City Group and has concluded it has appropriate expertise in class-action settlements and notice programs. Consequently, the Court appoints GCG to be the Browning Settlement Administrator, to assist and provide professional guidance in the implementation of the settlement and notice programs.

The Court has also reviewed the form of Email Notice attached to the Amended Settlement Agreement as Exhibit B; the Long-Form Notice attached to the Amended Settlement Agreement as Exhibit C, (which is to be posted on the Settlement Website and mailed to those Class Members receiving notice by standard U.S. mail); and the

1  Publication Notice attached to the Amended Settlement Agreement as Exhibit D.  The

2  Court has concluded that the notice program concisely and clearly states, in plain, easily

3  understood language, the nature of the action; the definition of the class certified; the class

4  claims, issues, or defenses; that a Class Member may enter an appearance through counsel

5  if the member so desires; that the Court will exclude from the class any Member who

6  requests exclusion, stating when and how members may elect to be excluded; and the

7  binding effect of a class judgment on Class Members, as required by Rule 23(c)(2)(B).  At

8  the preliminary fairness hearing on December 12, 2006 the Court pointed out an instance

9  of ambiguous language in certain of the notices.  On December 15, the parties submitted

10  revised language that removed the ambiguity.  Here, the Court is referring to the notices,

11  as revised.

12          The Court approves of the comprehensive notice program developed by the parties.

13  Specifically, the Court approves the forms of notice attached to the Amended Settlement

14  Agreement as Exhibits B, C, and D.  The Court also approves the procedures established

15  in the Amended Settlement Agreement for emailing, posting, mailing, and publishing

16  such notice, and the procedures for Settlement Class Members to request exclusion from

17  the class, which meet the requirements of Federal Rule of Civil Procedure 23.  The Court

18  finds that notice delivered through email and posted on the Internet — together with the

19  supplemental notice to be provided by mail (where necessary) and publication —

20  constitutes the best practicable notice under the circumstances of this case and notice in a

21  reasonable manner.  *See* Fed. R. Civ. P. 23(c)(2)(B) (class-certification notice); Fed. R.

22  Civ. P. 23(e)(1)(B) (settlement notice).

23          The Court orders that the notice program be implemented in the following four

24  steps:

25          1.      First, the Browning Settlement Administrator must construct and maintain a

26  website on which copies of the Amended Settlement Agreement, the Long-Form Notice

27  (in a form substantially similar to that attached as Exhibit C to the Amended Settlement

28  Agreement), and other documents important to the case may be kept.  The documents will

be available for Settlement Class Members to view and print, but class members will not be able to post their own materials on the website.

The Browning Settlement Administrator must ensure the website is operational by **January 26, 2007.**  The Browning Settlement Administrator shall file and serve an affidavit with the Court by **February 6, 2007** certifying compliance with this subsection.

2.      Second, ConsumerInfo will work in conjunction with The Browning Settlement Administrator to cause the approved Email Notice, in a form substantially similar to that attached as Exhibit B to the Amended Settlement Agreement, to be sent by email to each Settlement Class Member at each member's last known email address in the customer databases of ConsumerInfo (or any other Experian Entity that sold such Class Member the credit score or credit monitoring), to the extent such address is available.  The approved Email Notice will direct recipients to the Settlement Website, www.browningsettlement.com, which will display the entire Long-Form Notice (in a form substantially similar to that attached as Exhibit C to the Amended Settlement Agreement).

The Browning Settlement Administrator and ConsumerInfo will cause emails to be sent to Settlement Class Members in small clusters over a period of time, because sending the emails all at once could trigger spam filters, and the Court specifically approves this procedure.  The Email Notice must be completed by **February 27, 2007**.  The Browning Settlement Administrator shall file and serve an affidavit with the Court by **March 9, 2007** certifying compliance with this subsection.

3.      Third, the Browning Settlement Administrator will monitor the transmissions of the email, and if an email is returned to the sender because it could not be delivered ("bounced-back"), Defendants and the Browning Settlement Administrator may, if they deem it useful, cause the Email Notice to be re-sent.  In the event that each Email Notice sent to a particular Settlement Class Member is "bounced back," or no email address is located, Defendants and the Browning Settlement Administrator shall cause the approved mail notice, in a form substantially similar to that attached as Exhibit C to the Amended Settlement Agreement, to be sent via standard U.S. mail, postage prepaid,

requesting (at Defendants' option) either forwarding service or change service, to such Settlement Class Member's last known mailing address.  Defendants shall cause the last known mailing addresses to be updated by first utilizing data from Experian Information Solutions, Inc.'s credit files.  Consistent with the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), the Court orders that Experian Information Solutions, Inc. use its credit files to update Defendants' list of addresses in an effort to achieve the most accurate list of addresses possible.  This Court's Order does not, however, authorize Experian Information Solutions, Inc. to make any other use of the credit files or the resulting mailing list.  Thereafter, Defendants shall cause the last known mailing addresses to be updated by the Browning Settlement Administrator utilizing the National Change of Address ("NCOA") process as licensed by the U.S. Postal Service.  The Court finds that the foregoing databases reflect the most accurate current mailing addresses reasonably available for the Settlement Class Members.  The Browning Settlement Administrator will re-mail the Long-Form Notice via standard U.S. mail, postage prepaid, to updated addresses of Settlement Class Members to the extent that it receives address change notifications from the U.S. Postal Service.  The emailing and mailing of notices pursuant to this subsection will be completed by **March 30, 2007**.

The Browning Settlement Administrator shall file and serve an affidavit with the Court by **April 12, 2007** certifying compliance with this subsection.  The Browning Settlement Administrator is directed to preserve the email and postal mail tapes used in the notice program.

4.      Fourth, during the period for Email Notices and mail notices specified above, Defendants and the Browning Settlement Administrator shall cause the approved summary form of publication notice, in a form substantially similar to that attached as Exhibit D to the Amended Settlement Agreement, to be published in one daily issue and one weekend issue of the national edition of *USA Today*.  The Browning Settlement Administrator shall file and serve an affidavit with the Court by **April 12, 2007** certifying compliance with this subsection.

ConsumerInfo shall pay the costs of preparing, printing, emailing, posting, mailing, and publishing the approved notice, as described above, but Defendants shall have no further obligation to identify or locate Settlement Class Members, or to mail or otherwise disseminate the approved notice.

The Court also finds that defendants have sent a timely notification to the appropriate state and federal officials of this proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), in the event that CAFA applies, and have also, pursuant to the Court's direction, promptly provided the Federal Trade Commission with a copy of their court papers seeking preliminary approval of the Amended Settlement Agreement.

### Procedure for Exclusion, Objection, and Intervention

Settlement Class Members shall have the right to exclude themselves from the Settlement Class by sending a written request to "Exclusion Requests - Browning Settlement Administrator, P.O. Box 91141, Seattle, WA 98111-9241." The written request must contain the original signature of the class member; the class member's name, current postal address, and current telephone number; the last four digits of the Class Member's Social Security number; and a specific statement that the Class Member wants to be excluded from the Settlement Class. It must be postmarked by **May 15, 2007**. In no event shall persons who purport to opt out of the Settlement as a group, aggregate, or class involving more than one claimant be considered valid opt outs. Requests for exclusion that do not comply with any of the foregoing requirements will not be accepted.

The Browning Settlement Administrator shall be responsible for obtaining and maintaining that post office box, collecting the requests for exclusion, and forwarding copies of the same to ConsumerInfo's counsel and the Court on a weekly basis. The Browning Settlement Administrator shall also file an affidavit with the Court by **May 28, 2007** certifying compliance with this subsection, identifying all of the Settlement Class

1  Members who requested exclusion from the class, and attaching all of their written

2  requests for exclusion.

3      Any Settlement Class Member who does not opt out, but who instead wishes to

4  object to the Settlement, may do so by mailing a copy of his or her objection to

5  "Objections - Browning Settlement Administrator, P.O. Box 91141, Seattle, WA 98111-

6  9241." The objection must be mailed and postmarked by **May 15, 2007**. The objection

7  must include the Class Member's name, current postal address, and current telephone

8  number; the last four digits of the Class Member's Social Security number; and it must

9  state the reasons for objecting to the settlement. The Settlement Class Member must also

10  identify any written material on which his or her objection is based or on which the Class

11  Member intends to rely. Finally, the written objection must contain the original signature

12  of the Class Member and indicate whether the class member or his or her lawyer intends

13  to appear at the Final Fairness Hearing. Any lawyer who intends to appear at the Final

14  Fairness Hearing must enter a written Notice of Appearance of Counsel with the Clerk of

15  the Court as provided by paragraph 30 below.

16      The Browning Settlement Administrator shall be responsible for obtaining and

17  maintaining the post office box, collecting the objections and statements, and forwarding

18  copies of the same to ConsumerInfo's counsel and the Court on a weekly basis. The

19  Browning Settlement Administrator shall also file an affidavit with the Court by **May 28,**

20  **2007** certifying compliance with this subsection, identifying all of the Settlement Class

21  Members who objected, and attaching all of the objections.

22      Any Settlement Class Member who does not properly and timely submit the

23  foregoing written objection, as described above and more specifically in the Long-Form

24  Notice, shall be deemed to have waived, and shall be forever foreclosed from raising, any

25  objection to such matters, including the right to: (i) appear and object at the Final

26  Fairness Hearing; and (ii) appeal the final approval of the proposed settlement, the

27  resulting dismissal of this Litigation, or the award of attorneys' fees and costs to Class

28  Counsel.

1    Any Settlement Class Member who desires to intervene as a party in the Litigation

2 must file a Motion to Intervene with the Clerk of the Court by **May 15, 2007**.

3    ### Procedure for Governmental Entities Seeking to Be Heard

4    Defendants have sent a timely notification to the appropriate state and federal

5 officials in accordance with CAFA, in the event that CAFA applies, and have also

6 provided the FTC with a copy of their motion papers.  DEFENDANTS SHALL

7 ENSURE THAT A COPY OF THIS ORDER IS DELIVERED TO THE SAME

8 SERVICE LIST.  Any federal or state official seeking to be heard with respect to this

9 Amended Settlement Agreement shall mail a written statement to "Federal/State Official

10 - Browning Settlement Administrator, P.O. Box 91141, Seattle WA 98111-9241" to be

11 postmarked by **May 15, 2007**.  The written statement should identify the federal or state

12 official's (or counsel's) name, current postal address, and current telephone number.  It

13 should also identify the position taken with respect to the settlement, including any

14 written material on which the position is based or on which the official intends to rely

15 and any intention to appear at the Final Fairness Hearing.  Any lawyer who intends to

16 appear at the Final Fairness Hearing must enter a written Notice of Appearance of

17 Counsel with the Clerk of the Court as provided below.

18    The Browning Settlement Administrator shall be responsible for obtaining and

19 maintaining the post office box, collecting the written statements, and forwarding copies

20 of the same to ConsumerInfo's counsel and the Court on a weekly basis.  The Browning

21 Settlement Administrator shall also file an affidavit with the Court by **May 28, 2007**

22 certifying compliance with this subsection, identifying all of the federal or state officials

23 who submitted written statements, and attaching all of the statements.

24    ### Final Fairness Hearing

25    A Final Fairness Hearing shall be held before the undersigned on **July 31, 2007, at**

26 **10:00 A.M.** in the United States District Court for the Northern District of California, San

27 Jose Division, Courtroom 2, 280 South 1st Street, San Jose, California, on the fairness,

28 reasonableness, and adequacy of the proposed settlement set forth in the Amended

Settlement Agreement and on the request of Class Counsel for attorneys' fees and costs. Settlement Class Members who have not excluded themselves from the class but who have timely filed a proper written objection and complied with the other requirements set forth in the Long-Form Notice and this Order may appear at the Final Fairness Hearing in person or by counsel and be heard.  The Court will also consider any properly filed written objections.  Federal or state officials who have timely filed a proper written statement and complied with the other requirements set forth in this Order may appear at the Final Fairness Hearing in person or by counsel and be heard.  The Court will also consider any properly filed written statements.

If any Settlement Class Member intends to be represented by his or her own counsel at the Fairness Hearing to make an objection, statement, or file a Motion to Intervene, such counsel must file a written notice of appearance with the Clerk of the Court by **May 15, 2007**.  If any federal or state official intends to be represented by his or her own counsel at the Fairness Hearing to make a statement, such counsel must file a written notice of appearance with the Clerk of Court by **May 15, 2007**.

Counsel are directed to file any remaining briefs in support of the proposed settlement by **June 14, 2007**.  Class Counsel are directed to file any material in support of their fee petition by **June 14, 2007**.

If final approval of the proposed settlement class action as provided in the Amended Settlement Agreement is denied by the Court, or if the Amended Settlement Agreement is otherwise terminated for any reason, then, in either of such events:  (1) the class-certification portions of the Amended Settlement Agreement and the February 14, 2006 Settlement Agreement shall have no further force and effect with respect to any party to the Litigation and shall not be offered in evidence or used in the Litigation or any other proceeding; (2) counsel for the parties shall seek to have any Court orders, filings, or other entries in the Court's file that result from this class-action Amended Settlement Agreement or from the February 14, 2006 Settlement Agreement set aside, withdrawn, and stricken from the record; (3) the class-action Amended Settlement Agreement and

1   the February 14, 2006 Settlement Agreement, and all negotiations, proceedings, and

2   documents prepared, and statements made in connection with either of them, shall be

3   without prejudice to any party and shall not be deemed or construed to be an admission

4   or confession by any party of any fact, matter, or proposition of law; and (4) all parties to

5   the Litigation shall stand in the same procedural position as if the Amended Settlement

6   Agreement and the February 14, 2006 Settlement Agreement had not been negotiated,

7   made, or filed with the Court.

8          If the class-action settlement is terminated or not approved, the Amended

9   Settlement Agreement and the superseded February, 2006 Settlement Agreement and all

10  negotiations and proceedings relating thereto shall be withdrawn without prejudice as to

11  the rights of any and all parties thereto, who shall be restored to their respective

12  procedural positions existing before the date of any settlement agreement.

13         The Court may:  (i) approve the Amended Settlement Agreement, with such

14  modifications as may be agreed to by Defendants and Plaintiff, without further notice;

15  and (ii) adjourn the aforesaid Final Fairness Hearing from time to time, by oral

16  announcement at the hearing on **July 31, 2007** without further notice.

17         IT IS SO ORDERED.

18          December 27, 2006

19                                         _____
                                           Howard R. Lloyd
20                                         United States Magistrate Judge
                                           Northern District of California

21

22

23

24

25

26

27

28

                                           21