1    E. Clayton Lowe, Jr. (*admitted pro hac vice*)
2    Peter A. Grammas (*admitted pro hac vice*)
3    Liberty Park
4    1952 Urban Center Parkway
5    Birmingham, Alabama 35242
6    (205) 380-2400
7    (205) 380-2408 (facsimile)
8
9    Attorneys for Plaintiff CHUCK BROWNING and
10   the Settlement Class
11   Additional Counsel listed on signature page
12
13
14
15              IN THE UNITED STATES DISTRICT COURT
16            FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                       SAN JOSE DIVISION
18
19
20
21   **CHUCK BROWNING,**                )
22   **individually and on behalf of**  )
23   **all persons similarly situated,** )      CIVIL ACTION NO.: 04-1463 HRL
24                                       )
25              **Plaintiff,**           )      <u>CLASS ACTION</u>
26                                       )
27   v.                                  )      **MEMORANDUM IN SUPPORT OF**
28                                       )      **PLAINTIFF'S MOTION FOR AWARD**
29   **YAHOO! INC., et al.,**            )      **OF ATTORNEY'S FEES AND**
30                                       )      **REIMBURSEMENT OF EXPENSES**
31                                       )
32              **Defendants.**          )
33   ─────────────────────────────       )
34

**TABLE OF CONTENTS**

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD
OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES . . . . . . . . . . . . . . . . . . . 1

A.    Background: The Fees Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    Counsels' Efforts Have Created A Common Benefit For The Class
            and Counsel Are Entitled To Be Compensated . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    The Percentage of the Recovery Method is Appropriate When Common
            Benefits Are Created; Even When No Monetary Fund Is Created . . . . . . . . . . . 5

        3.    Percentage-of-Fund/Benefit Method is Also Appropriate Where the
            Defendant Agrees to Pay Fees in Addition to Class Compensation . . . . . . . . . . 8

        4.    Percentage-of-Fund/Benefit Method is Appropriate Even Though Some
            of the Claims Asserted and Settled Might Be Governed By A
            Fee-Shifting Statute If Tried To A Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.    Award Of 3.6% Of The Minimum Value of the Common Fund Created
        Is Reasonable and Fair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D.    Consumer Class Actions Are Unpredictable and Recovery Was Far
        From Assured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.    The Result Under A Percentage-Of-The-Fund Approach Is Confirmed By
        A Lodestar Cross-Check . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.    The Objections To the Proposed Fee Are Meritless . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.    The Expenses Are Reasonable And Should Be Reimbursed . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## Cases

Arenson v. Board of Trade,
    372 F. Supp. 1349, 1354 (N.D. Ill. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Blum v. Stenson,
    465 U.S. 886, 900 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 16, 19

Boeing Co. v. Van Gemert,
    444 U.S. 472, 478 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Brytus v. Spang & Co.,
    203 F.3d 238, 243-46 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Central R. R. & Banking Co. v. Pettus,
    113 U.S. 116, 123 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Church v. Consolidated Freightways,
    [1993 Transfer Binder] Fed. Sec. L. Rep. ¶ 97, 743 (N.D. Cal. May 3, 1993) . . . . . . . . . 8

Class Plaintiffs v. Jaffe & Schlesinger, P.A.,
    19 F.3d 1306, 1308 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conroy v. 3M Corp.,
    C-00-2810 CW (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

County of Suffolk v. Long Island Lighting Co.,
    907 F.2d 1295, 1327 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dehoyos v. AllState Corp.,
    240 F.R.D. 269, 335-36 (W.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Duhaime v. John Hancock Mut. Life Ins. Co.,
    989 F.Supp. 375 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fischel v. Equitable Life Assur. Soc'y,
    307 F.3d 997, 1006 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Florin v. Nationsbank of Georgia, N.A.,
    34 F.3d 560, 563-565 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gaskill v. Gordon,
    160 F.3d 361, 363-64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gates v. Deukmejian,
    987 F.2d 1392, 1405 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

Hall v. Cole,
    412 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hanlon v. Chrysler Corp.,
    150 F. 3d 1011, 1029 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7, 11, 16, 17, 19

Harris v. Marhoefer,
    24 F. 3d 16, 19 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Helms v. ConsumerInfo.com, Inc.,
    236 F.R.D. 561, 564-66 (N.D. Ala. 2005) . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 15, 16, 20, 21

Hemphill v. San Diego Asso. of Realtors, Inc.,
    225 F.R.D. 616, 623 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hernandez v. Kovacevich,
    2005 WL 2435906 *8 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hillis v. Equifax Consumer Serv., Inc.,
    237 F.R.D. 491 (N.D. Ga. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

In re Activision Securities Litig.,
    723 F. Supp. 1373, 1377 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Airline Ticket Com'n Antitrust Litig.,
    953 F. Supp. 280, 286 (D. Minn. 1997), *aff'd in part, rev'd and*
    *remanded on other grounds,* 268 F. 2d 619 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 13

In re Art Materials Antitrust Litig.,
    100 F.R.D. 367, 372 (N.D. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Businessland Securities Litig.,
    [1991 Transfer Binder] Fed. Sec. L. Rep. P 96, 059, 1991 WL 427887,
    at *3 (M.D. Cal. June 14, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Cuisinart Food Processor Antitrust Litig.,
    1983-2 Trade Cas. (CCH) ¶ 65, 680 at 69, 470 n.21 (D. Conn. 1983) . . . . . . . . . . . . . . 23

In re Domestic Air Transp. Antitrust Litig.,
        148 F.R.D. 297, 352-54 (N.D. Ga. 1993) ................................... 23

In re Fine Paper Antitrust Litig.,
        751 F.2d 562, 583 (3d Cir. 1984) .......................................... 9

In re Genentech, Inc. Securities Litig.,
        C88 4038 DLJ (N.D. Cal. Feb. 21, 1991) ................................... 8

In re IDB Communication Group, Inc. Securities Litig.,
        No. 94-3618 (C.D. Cal., Jan. 17, 1997) ................................... 12

In re Informix Corp. Securities Litig.,
        No. 97-1289 (N.D. Cal., Nov. 23, 1999) ................................... 12

In re Lorazepam & Clorazepate Antitrust Litig.,
        2003 WL 22037741, *8 (D. D. C. 2003) ................................... 13

In re M.D.C. Holdings Securities Litig.,
        [1990 Transfer Binder] Fed. Sec. L. Rep. (S.D. Cal. 1990) ...................... 16

In re Melridge, Inc. Securities Litig.,
        No. 87-1426 (D. Ore., Mar. 19, 1992, Nov. 1, 1993 and Apr. 15, 1996) ............ 12

In re Methionine Antitrust Litig.,
        Nos. C 00-3961, C01-0944, C 01-2629, C 01-3447, C 01-4292
        (N.D. Cal. 2002) ................................................... 12, 13

In re Montgomery County Real Estate Antitrust Litig.,
        83 F.R.D. 305, 319-23 (D. Md. 1979) ..................................... 23

In re Nat'l Health Labs. Securities Litig.,
        Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995) ........................... 12

In re Network Equipment Tech. Securities Litig.,
        No. C 90 1138 DLJ (N.D. Cal. Dec. 16, 1991) ................................ 8

In re Prudential Ins. Co. America Sales Practices Litigation,
        148 F.3d (3rd Cir. 1998) ........................................... 6, 9, 16

In re Rite Aid Corp. Securities Litig.,
        146 F. Supp. 2d 706, 735-36 (E. D. Pa. 2001) ............................... 13

In re Sodium Gluconate Antitrust Litig.,
    No. C 97-4142 (N.D. Cal. 1999) ............................................. 12

In re Sorbates Direct Purchaser Antitrust Litig.,
    No. 98-4886 (N.D. Cal., Nov. 20, 2000)  .................................... 12

In re Vitamins Antitrust Litig.,
    No. 99-197, 2001 WL 34312839, *12 (D.D.C. 2001)  ......................... 13

In re Washington Public Power Supply System Securities Litig.,
    19 F.3d 1291, 1300 (9th Cir.1994) ...................................... 4, 7, 20

Johnston v. Comerica Mortg. Corp.,
    83 F.3d 241, 246 (8th Cir. 1996) ............................................. 9

Keith v. Volpe,
    501 F.Supp. 403, 414 (C.D. Cal. 1980)  ..................................... 19

Kahan v. Rosenstiel,
    424 F.2d 161 (3d Cir. 1970) .................................................. 6

Kerr v. Screen Extras Guild, Inc.,
    526 F.2d 67, 70 (9th Cir. 1975)  ............................................ 19

Kirchoff v. Flynn,
    786 F.2d 320, 232 (7th Cir. 1986)  .......................................... 16

Lubliner v. Maxtor Corp.,
    [1989-90 Transfer Binder] Fed. Sec. L. Rep. P 94, 949,
    1990 WL 41409, at *1 (N.D. Cal. Feb. 14, 1990) .............................. 8

Lucas v. White,
    63 F.Supp.2d 1046, 1057-58 (N.D. Cal. 1999) ............................... 22

McKittrick v. Gardner,
    378 F.2d 872, 875 (4th Cir. 1967) ........................................... 18

Meshel v. Nutri/System, Inc.,
    102 F.R.D. 135, 140 (E. D. Pa. 1984) ...................................... 18

Mills v. Electric Auto-Lite Co.,
    396 U.S. 375 (1970) ..................................................... 4, 5, 6

Muehler v. Land O'Lakes, Inc.,
    617 F.Supp. 1370, 1375 (D. Minn. 1985) ..................................... 5

O'Keefe v. Mercedes-Benz USA, LLC,
    214 F.R.D. 266, 295, fn. 26 (E.D. Pa. 2003) .................................. 21

Paul, Johnson, Alston & Hunt v. Graulty,
    886 F.2d 268, 272 (9th Cir. 1989) ..................................... 7, 10, 11

Perma Life Mufflers, Inc. v. International Parts Corp.,
    392 U.S. 134, 139 (1968) ................................................ 5

Phemister v. Harcourt Brace Jovanovich, Inc.,
    1984-2 Trade Cas. (CCH) ¶ 66, 234 at 66, 995-98 (N.D. Ill. 1984) ............... 23

Pillsbury Co. v. Conboy,
    459 U.S. 248, 262-63 (1983) ............................................. 4

Powers v. Eichen,
    229 F.3d 1249, 1257 (9th Cir. 2000) ...................................... 7

Reiter v. Sonotone Corp.,
    442 U.S. 330, 331 (1979) ................................................ 4

Rosted v. First USA Bank,
    No. 97-1482 (W. D. Wash., June 15, 2001) ................................. 12

Scott v. Blockbuster, Inc.,
    2001 WL 1763966 *3 (Tex. Dist. Ct., 2001) ................................ 21

Shaw v. Toshiba Amer. Info. Sys., Inc.,
    91 F. Supp. 942, 960 (E. D. Tex. 2000) ................................... 14

Six (6) Mexican Workers v. Arizona Citrus Growers,
    904 F. 2d 1301, 1311 (9th Cir. 1990) .................................... 7, 11

Skelton v. General Motors Corp.,
    860 F.2d 250, 255 (7th Cir. 1988) ...................................... 9, 10

Slack v. Fair Isaac Corp., et al.,
    1:07-CV-314-TCB (N.D. Ga) ........................................... 13

State of Hawaii v. Standard Oil Co.,
    405 U.S. 251, 266 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

States of N.Y. and Md. v. Nintendo of America, Inc.,
    775 F.Supp. 676, 679 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Van Gemert v. Boeing Co.,
    590 F.2d 433 (2d Cir. 1978), aff'd, 444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . 5, 6

Van Vranken v. Atlantic Richfield Co.,
    901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Vincent v. Hughes Air West, Inc.,
    557 F.2d 759, 769 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

Vizcaino v. Microsoft Corp.,
    290 F.3d 1043, 1047, 1050-51 (9th Cir.) . . . . . . . . . . . . . . . . . . . 7, 11, 12, 16, 18, 19, 20

Vizcaino v. Waite,
    537 U.S. 1018 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Waters v. International Precious Metals Corp.,
    190 F.3d 1291, 1294 (11th Cir. 1999),
    cert. denied, 530 U.S. 1223 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Weiss v. Mercedes-Benz of N. America, Inc.,
    899 F.Supp. 1297, 1304 (D. N.J.), aff'd, 66 F.3d 314 (3d Cir. 1995) . . . . . . . . . . . . . . 23

Wershba v. Apple Computer, Inc.,
    91 Cal. App. 4th 224, 254-255, 110 Cal. Rptr. 2d 145,
    169-70 (2001), review denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Williams v. MGM-Pathe Communications. Co.,
    129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

**Statutes**

Credit Repair Organizations Act,
    15 U.S.C. § 1679 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Treatises**

Manual for Complex Litigation § 14.121 (4th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

1    COMES NOW the plaintiff, Chuck Browning, individually and on behalf of the Settlement

2    Class, and submits the following memorandum in support of the Motion for Award of Attorneys'

3    Fees and Reimbursement of Expenses.

4    **A.    Background: The Fees Sought.**

5        Pursuant to the Amended Settlement Agreement (hereinafter "Settlement Agreement" or

6    "Agreement") preliminarily approved by this Court, the parties agreed that defendants

7    ConsumerInfo.com, Inc. ("CIC") and Experian North America, Inc. ("Experian") would pay Class

8    Counsel's attorney's fees and expenses up to $2.55 million, from a source independent of the class

9    consideration, subject to court approval.  Agreement at ¶ V.A., pp. 30-31 .   As part of the

10   Agreement, and in addition to the class relief, the defendants also agreed to pay all costs of

11   administering the settlement, including costs of implementing Class notice and distributing products.

12   *Id.* at, ¶ VII. E., pp. 35-36.    As the Court is aware, the Agreement, including the fee and expense

13   amount, was reached with the assistance of mediator Rodney A. Max, Esq.[1]

14       It is also important to acknowledge that not until after the parties had negotiated the

15   Settlement Consideration and the payment of administrative expenses did they begin negotiations

16   on the issue of attorneys' fees and expenses.  Max Affid., ¶ 5.  "The parties thereafter reached an

17   impasse on the attorney's fees issue, however, and negotiations broke off."  *Id.* at ¶ 6.  Many days

18   later, Mr. Max  "submitted to the parties a final 'mediator's proposal.'"  *Id.* at ¶ 6.  The amount

19   proposed by Mr. Max was $2.55 million, including costs and expenses, with the defendants paying

---

[1] Mr. Max's selection as mediator was approved by the Eleventh Circuit Court of Appeals Alternative Dispute Resolution Program.  Mr. Max's affidavit regarding the negotiations and resulting Agreement was previously filed in this case as Exhibit 1 to Supplemental Filing in Support of Joint Motion for Certification of Tentative Settlement Class, et al., Doc. No. 108.

1    such amount, if approved by the Court. See Lowe Declaration, ¶ 7 (filed contemporaneously

2    herewith) Mr. Max's proposal was a significant compromise from the sums suggested by the

3    opposing parties. Nonetheless, the parties accepted the proposal and began preparation of definitive

4    settlement documents. Id.

5         The request of $2.55 million in fees and expenses is between approximately 3.6% and .09%

6    of the $70 million to $278.8 million Settlement Consideration value.[2]  Plaintiff's request is an even

7    smaller percentage of the overall value of the settlement when you include remedial relief, notice

8    costs, administrative expenses, and attorney's fees with the Settlement Consideration.  To simplify

9    matters for purposes of the analysis to follow, however, Plaintiff refers to the request as 3.6%.

10        An award of 3.6% in fees is well below the range of fee awards in common fund cases in the

11   Ninth Circuit and the Northern District of California and obviously below the 25% "benchmark" for

12   fees in such cases.  This award is more than reasonable in light of the results obtained in this very

13   time consuming and complex case, which presented Class Counsel with considerable litigation risks,

14   and is justified under both the percentage-of-the-benefit and lodestar-cross check methods that courts

15   use to determine fees in similar cases.

16        Of the $2.55 million requested, $47,642.86 represents Class Counsel's unreimbursed

17   expenses incurred to date. Lowe Decl. at ¶ 15.  Deducting these expenses from the total requested

18   award reveals that Class Counsel seeks $2,502,357.14 in attorneys' fees.  Applying the lodestar

19   "cross check" discussed in detail in Section E below, this net fee request represents a "negative"

---

[2] The $70 million lower end of this range of value is derived by multiplying the $5 retail value of a credit
score by the 14 million estimated class members.  The $280 million upper end of the range is derived by multiplying
$19.90 (2 months of credit monitoring at retail value of $9.95 per month) by the 14 million estimated class
members.

1    multiplier of .94. (Net requested attorneys' fees of $2,502,357.14 divided by Class Counsel's

2    aggregate lodestar amount of $2,688,647.50 equals .94). See Lowe Declaration at ¶ 13.

3         This litigation involved novel issues regarding interpretation and application of CROA, as

4    well as significant risks, including obtaining class certification in this Court after a denial of

5    certification by the *Helms* Court[3], maintaining an appeal in the *Helms* case to the Eleventh Circuit

6    that defendants' actions violated CROA, and establishing to this Court that defendants' actions are

7    subject to CROA. Such "risks" were previously recognized and evaluated by this Court in its

8    December 27, 2006 Order Certifying Tentative Settlement Class, et al., Doc. No. 137 at 12:4-15,

9    2006 WL 3826714 *7 (N.D. Cal. 2006). In light of these many risks, the results obtained for the

10   Class and the other factors discussed herein, the Court should approve attorneys' fees and expenses

11   equal to the $2.55 million, which the mediator proposed and which defendants accepted and agreed

12   not to oppose.[4]

13        **B.    Applicable Legal Standards.**

14        In calculating attorney's fees in civil class action cases, the district court has

15   discretion to use either the percentage method or the lodestar/multiplier method. *Hanlon v. Chrysler*

16   *Corp.,* 150 F. 3d 1011, 1029 (9th Cir. 1998). Because this settlement results in common benefits to

17   the class, and includes a negotiated fee award to be paid by defendants, the proper method for

18   evaluating plaintiff's fee request is through a percentage-of-the-benefit analysis with a lodestar cross-

19   check.

---

[3] See *Helms v. ConsumerInfo.com, Inc.,* 236 F.R.D. 561, 564-66 (N.D. Ala. 2005).

[4] In a similar case, *Hillis v. Equifax Consumer Serv., Inc.,* 237 F.R.D. 491 (N.D. Ga. 2006), the Court, relying in part upon *Helms,* denied class certification to a "CROA plaintiff."

1.     **Counsels' efforts have created a common benefit for the class and counsel are entitled to be compensated.**

The common relief available to each class member in this case constitutes a "common benefit" or "common fund" for purposes of determining an appropriate fee award.  Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.  As stated by the United States Supreme Court, "this Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 393 (1970); *Central R. R. & Banking Co. v. Pettus,* 113 U.S. 116, 123 (1885); *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."); *Class Plaintiffs v. Jaffe & Schlesinger, P.A.,* 19 F.3d 1306, 1308 (9th Cir.1994).

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class."  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply System Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir.1994) ("WPPSS").

The Supreme Court repeatedly has recognized the importance of private litigation as a necessary and desirable tool to assure the effective enforcement of federal laws. *See, e.g., Pillsbury Co. v. Conboy,* 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 331 (1979);

1  *State of Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v.*

2  *International Parts Corp.*, 392 U.S. 134, 139 (1968).  Further, if counsel are not adequately

3  compensated in successful cases, then "effective representation for plaintiffs" in these cases will not

4  be available.  As one court has stated:

5          The contingent fee and the class action are the 'the poor man's keys
6          to the courthouse.'  Both vehicles allow the average citizen and
7          taxpayer to have their injuries redressed and their rights protected.
8          Both permit persons of limited resources to obtain competent legal
9          counsel, an essential ingredient in our adversary system of justice.
10         And both are under constant attack.
11
12  *Muehler v. Land O'Lakes, Inc.*, 617 F.Supp. 1370, 1375 (D. Minn. 1985).

13         This reasoning is further supported by the many "common benefit" cases which have

14  awarded fees even though no "cash" fund was created and, thus, the fees necessarily did not come

15  from any common fund.  See e.g., *Van Gemert v. Boeing Co.*, 444 U.S. 472 (1980); *Hanlon v.*

16  *Chrysler Corp.*, 150 F.3d at 1029 (approving award of attorneys' fees because class members

17  received common benefits even where "no class member is entitled to a cash recovery").[5]

18         **2.     The percentage of the recovery method is appropriate when common**
19                 **benefits are created; even when no monetary fund is created.**
20
21         In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), the percentage-of-the-recovery

22  concept was expanded to include an award of fees even when there was no monetary fund brought

23  under the control of the court.  The Court approved a line of cases permitting reimbursement of

24  attorneys' fees when the litigation has "conferred a substantial benefit on the members of an

---

[5] It is also important to note that the Ninth Circuit has held that attorney's fees should be calculated as a percentage of the total fund available to the class, whether claimed or not. See *Williams v. MGM-Pathe Comm. Co.*, 129 F.3d 1026 (9th Cir. 1997).

1    ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes

2    possible an award that will operate to spread the costs proportionately among them." *Id.* Similarly,

3    in *Hall v. Cole*, 412 U.S. 1 (1973), a fee award was made based on the plaintiff's establishment of

4    certain personal rights within his union based on federal labor law. In *Kahan v. Rosenstiel*, 424 F.2d

5    161, 166 (3d Cir. 1970), the court summarized the *Mills* decision:

6        "The Supreme Court [in *Mills*] stated that the award of attorney's fees
7        is not limited to circumstances in which there is a monetary fund from
8        which fees may be paid, but extends to any situation in which the
9        litigation 'has conferred a substantial benefit on the members of an
10       ascertainable class.' 396 U.S. at 393-394, 90 S. Ct. at 626."

11

12   Further, although the settlement in this case is not a classic "common fund" in that

13   defendants have not created a pool of "money" to be divided among the class, numerous courts have

14   held that uncapped, non-cash settlements similar to the one here are appropriately treated the same

15   as common funds. *See In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 148 F.3d 283 (3rd Cir.

16   1998); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F.Supp. 375 (D. Mass. 1997)

17   Another example of the equitable distribution of the costs of litigation under the common

18   fund theory is *Van Gemert v. Boeing Co.*, 590 F.2d 433 (2d Cir. 1978), *aff'd*, 444 U.S. 472 (1980),

19   in which the court awarded counsel fees, expenses, and disbursements to be paid from the total

20   recovery on a pro rata basis, against both the claimed and unclaimed portions of the class action

21   judgment. *See also Williams v. MGM-Pathe Communications Co.*, 122 F.3d at 1027 (district court

22   abused its discretion by basing the fee on the class members' claims against the fund rather than on

23   a percentage of the value of the entire fund or on the lodestar).

24   The amount of the award of attorneys' fees and expenses is within the discretion of the

25   district court and will only be set aside upon a showing that the award was an abuse of discretion.

1    *Hanlon,* 150 F.3d at 1029; *WPPSS,* 19 F.3d at 1296. As previously stated, in this Circuit, the district

2    court has discretion in common fund cases to choose either the "percentage-of-the-fund" or the

3    "lodestar" method. *Fischel v. Equitable Life Assur. Soc'y,* 307 F.3d 997, 1006 (9th Cir. 2002);

4    *Vizcaino v. Microsoft Corporation,* 290 F.3d 1043, 1047 (9th Cir.), *cert. denied sub nom. Vizcaino*

5    *v. Waite,* 537 U.S. 1018 (2002); *Hanlon,* 150 F.3d at 1029; *WPPSS,* 19 F.3d at 1296.

6          However, the lodestar approach is used more often in "employment, civil rights and other

7    injunctive relief class actions... because there is no way to gauge the net value of the settlement or

8    any percentage thereof." *Hanlon,* 150 F.3d at 1029. Here, by contrast, the Settlement Consideration

9    is worth between a minimum value of approximately $70 million and a maximum value of $278

10   million (excluding the value of administrative costs, attorney's fees and remedial relief). The

11   percentage-of-recovery for fee computation purposes may be based on the total amount of that value.

12   *Boeing,* 444 U.S. at 479-80; *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1294

13   (11th Cir. 1999), *cert. denied,* 530 U.S. 1223 (2000); *Williams v. MGM- Pathe Communications Co.,*

14   129 F.3d at 1027; *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F. 2d 1301, 1311 (9th Cir.

15   1990).

16         Under the percentage-of-the-fund/benefit approach, the district court awards a percentage of

17   the fund created by the attorneys' efforts as their reasonable attorneys' fee. *Blum,* 465 U.S. at 900

18   n.16. Using this approach, a long list of Ninth Circuit cases treat 25% as a benchmark which can

19   be adjusted upward or downward as the circumstances of the case require. *Fischel,* 307 F.3d at

20   1006; *Vizcaino,* 290 F.3d at 1047; *Powers v. Eichen,* 229 F.3d 1249, 1257 (9th Cir. 2000); *Hanlon,*

21   150 F.3d at 1029; *Williams,* 129 F.3d at 1027; *Mexican Workers,* 904 F.2d at 1311; *Paul, Johnson,*

22   *Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989). In *Vizcaino,* a 28% fee was upheld

1 based on such factors as: (1) the exceptional results for the class, (2) the risk for its counsel, (3)

2 whether any individual non-monetary benefits were obtained, (4) whether the fee is within the range

3 typically associated with cases of this kind, and (5) the burden on the class counsel of prosecuting

4 the case. 290 F.3d at 1048-50.

5    In the Northern District of California, numerous decisions have awarded 30% of the common

6 fund obtained. *See, e.g., In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989); *In*

7 *re Businessland Sec. Litig.,* [1991 Transfer Binder] Fed. Sec. L. Rep. P 96, 059, 1991 WL 427887,

8 at *3 (M.D. Cal. June 14, 1991); *Lubliner v. Maxtor Corp.,* [1989-90 Transfer Binder] Fed. Sec. L.

9 Rep. P 94, 949, 1990 WL 41409, at *1 (N.D. Cal. Feb. 14, 1990); *Church v. Consolidated*

10 *Freightways,* [1993 Transfer Binder] Fed. Sec. L. Rep. P 97, 743 (N.D. Cal. May 3, 1993); *In re*

11 *Genentech, Inc. Sec. Litig.,* C88 4038 DLJ (N.D. Cal. Feb. 21, 1991); *In re Network Equipment Tech.*

12 *Sec. Litig.,* No. C 90 1138 DLJ (N.D. Cal. Dec. 16, 1991).

13    The trend in this Circuit is consistent with decisions nationwide awarding fees in common

14 fund cases based on a percentage of the value of the total recovery. *See Manual for Complex*

15 *Litigation* § 14.121 (4th ed. 2004) ("The vast majority of courts of appeals now permit or direct

16 district courts to use the percentage-fee method in common fund cases").

17     **3. Percentage-of-Fund/Benefit Method is Also Appropriate Where**
18       **the Defendant Agrees to Pay Fees in Addition to Class Compensation.**
19
20    Even if attorneys' fees are negotiated and to be paid by the defendant, separate and apart from

21 the settlement fund, that does not militate against the use of the percentage of the benefit method.

1    *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996).[6]  In *Johnston,* as here, the fees

2    did not strictly come from a "common fund," but the court of appeals explained:

3              "[I]n essence the entire settlement amount comes from the same
4              source.  The award to the class and the agreement on attorney fees
5              represent a package deal.  Even if the fees are paid directly to the
6              attorneys, those fees are still best viewed as an aspect of the class'
7              recovery.  Accordingly, the direct payment of attorney fees by
8              defendants should not be a barrier to the use of the percentage of the
9              benefit analysis ..."
10
11   83 F.3d at 246, (citation omitted). *See also In re Prudential Ins. Co. America Sales Litigation,* 148

12   F.3d at 335-36 (upholding district court's determination that, although no cash fund was created and

13   attorneys' fees were paid directly to counsel, "the settlement was most closely aligned to the

14   common fund paradigm and a percentage-of-recovery calculation was the appropriate measure of

15   the attorneys' fee award.").

16              **4.      Percentage-of-Fund/Benefit method is appropriate even though some of**
17                        **the claims asserted and settled might be governed by a fee-shifting**
18                        **statute if tried to a judgment.**
19
20   It is also appropriate to calculate attorneys' fees based on a percentage-of-the-fund/benefit

21   from class action settlements even though a statutory fee-shifting provision would have applied to

22   some of the claims had the case gone to judgment.  See *In re Fine Paper Antitrust Litig.,* 751 F.2d

23   562, 583 (3d Cir. 1984) ("settlements releasing defendants from both damage and statutory fee

24   liability ... result in a fund in court from which fees [can] be awarded under the equitable fund

25   doctrine"); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 563-565 (7th Cir. 1994); *Skelton*

---

[6] [T]he Court's task in reviewing negotiated fees is different from the court's task in fashioning fee awards from scratch.... The court is simply to determine whether the negotiated fee is facially fair and reasonable." *Hernandez v. Kovacevich,* 2005 WL 2435906 *8 (E.D. Cal. 2005) (citations omitted).

1    *v. General Motors Corp.,* 860 F.2d 250, 255 (7th Cir. 1988). When there has been a settlement, the

2    basis for the statutory fee has been discharged, and it is only the fund that remains. *Brytus v. Spang*

3    *& Co.,* 203 F.3d 238, 243-46 (3rd Cir. 2000) (court may use percentage-of-the-fund to calculate fees

4    in "hybrid cases" where settled claims are based on statute with fee-shifting provision but settlement

5    has created common fund); see also *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295,

6    1327 (2d Cir. 1990) ("fee-shifting statutes are generally not intended to circumscribe the operation

7    of the equitable fund doctrine").

8           In this case, plaintiff has agreed to settle both state law claims in addition to statutory claims

9    under the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. ("CROA"). Moreover, the

10    language of CROA Section 1679(a)(3) regarding attorney's fees does not by its terms apply to cases

11    settled by the creation of a common fund. Section 1679(a)(3) provides that persons who fail to

12    comply with CROA shall be liable "In the case of any successful action to enforce any liability under

13    paragraph (1) or (2), [for] the costs of the action, together with reasonable attorney's fees." There

14    is no statutory mandate requiring application of the fee-shifting provision, and its associated lodestar

15    method, to the instant case. Furthermore, case law imposes no limitation on the Court's ability to

16    apply common fund principles to a CROA settlement. CROA's statutory fee-shifting provision does

17    not foreclose application of common fund principles, including use of the percentage method, to the

18    CROA portion of the settlement, particularly where, as here, there has been no final determination

19    of liability under CROA and defendants deny that CROA is applicable to their business practices.

20           Also, if the Court were to apply the lodestar approach to the CROA portion of the settlement,

21    and percentage-of-recovery to any remaining non-CROA portion, any attempt to allocate hours spent

22    by Class Counsel on the CROA claim would be arbitrary at best. *See Paul, Johnson* 886 F.2d at 272

1    (using percentage-of-recovery instead of lodestar because "it would be impractical, if not impossible,

2    for the district court to determine the number of hours expended by [counsel]" in creating 70% of

3    the settlement fund.)

4    **C.     An Award Of 3.6% Of The Minimum Value of the Common Fund Created Is**
5    **Reasonable And Fair.**
6
7            Under the percentage method, courts award a percentage of the common fund sufficient to

8    provide class counsel with a reasonable fee. *Paul, Johnson,* 886 F.2d at 272.  The Ninth Circuit has

9    established 25% of the common fund as a "benchmark" for attorneys' fees awards. *Hanlon,* 150

10   F.3d at 1029; *Mexican Workers,* 904 F.2d at 1311.  The benchmark percentage can be adjusted

11   upward or downward to account for special or unusual circumstances. *Fischel,* 307 F.3d at 1006;

12   *Mexican Workers,* 904 F.2d at 1311; *Paul, Johnson,* 886 F.2d at 272.  While there is not an

13   exhaustive delineation of what constitutes special or unusual circumstances, this Circuit has stated

14   that the circumstances must "indicate that the percentage recovery would be either too small or too

15   large in light of the hours devoted to the case or other relevant factors." *Mexican Workers,* 904 F.2d

16   at 1311.

17           The percentage of the fund sought by Class Counsel is substantially below the benchmark

18   established by *Vizcaino* and other cases. This is so although Class Counsel achieved a substantial

19   settlement valued at between $70 million and $278 million in a risky case, which has been

20   vigorously litigated for nearly four years at considerable time and expense. *See Manual for Complex*

21   *Litigation,* §14.121, at fn. 517 (4th ed. 2004) (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S.

22   326, 338-39 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys

23   to devote their time to complex, time-consuming cases in which they risk nonpayment)).  Class

1    Counsel's requested fees and expenses are well below the percentages of recoveries awarded in other

2    major class action cases.  Recent surveys of such fee awards include the following.

3    •    In *Vizcaino,* the Ninth Circuit surveyed 34 class action fee awards across the nation

4         during the period 1996-2001 which used the percentage-of-the-fund method.  290

5         F.3d at 1052-54.  The decisions from the Ninth Circuit involved awards of 11.8% to

6         37% of the common fund:

7    •    *In re Informix Corp. Sec. Litig.,* No. 97-1289 (N.D. Cal., Nov. 23, 1999) (Breyer, J.)

8         (30%: $40 million fee, $137 million fund);

9    •    *Rosted v. First USA Bank,* No. 97-1482 (W. D. Wash., June 15, 2001) (Lasnik, J.)

10        (11.8%: $10 million fee, $87 million fund);

11   •    *In re Sorbates Direct Purchaser Antitrust Litig.,* No. 98-4886 (N.D. Cal., Nov. 20,

12        2000) (Legge, J.) (25%: $20 million fee, $82 million fund);

13   •    *Van Vranken v. ARCO,* 901 F. Supp. 294 (N.D. Cal. 1995) (25%: $19 million fee,

14        $76 million fund);

15   •    *In re IDB Communication Group, Inc. Sec. Litig.,* No. 94-3618 (C.D. Cal., Jan. 17,

16        1997) (Hupp, J.) (16.5%: $12 million fee, $75 million fund);

17   •    *In re Nat'l Health Labs. Sec. Litig.,* Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15,

18        1995) (Brooks, M. J.) (30%: $19 million fee, $64 million fund);

19   •    *In re Melridge, Inc. Sec. Litig.,* No. 87-1426 (D. Ore., Mar. 19, 1992, Nov. 1, 1993

20        and Apr. 15, 1996) (Frye, J.) (37.1%: $20 million fee, $54 million fund).[7]

---

[7]  *See also In re Sodium Gluconate Antitrust Litig.,* No. C 97-4142 (N.D. Cal. 1999) (Wilken, J.)
(Awarding fees equaling 30% of $4.8 million recovery); *In re Methionine Antitrust Litig.,* Nos. C 003961, C 01-

Memorandum in Support of Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses
C04-1463-HRL                                              -12-

1        More recently, this court in *Conroy v. 3M Corp.,* C-00-2810 CW (N.D. Cal.) (Wilken, J.),

2   awarded $7.5 million in fees and expenses on 7,828 hours where class consideration was distribution

3   of $41 million worth of defendants' tape products to charities. The fee represented approximately

4   18% of the "fund" and a multiplier of approximately 2.1 on Class Counsel's lodestar.[8]

5        Here, the requested fee and expense award is $2.55 million, only 3.6% of the minimum

6   potential value of the Settlement Consideration. This figure falls below the averages identified

7   above and is well within the range of awards in Ninth Circuit district court common fund opinions.

8        The requested fee and expense award is also smaller than court awards outside the Ninth

9   Circuit in complex cases. *See, e.g., Gaskill v. Gordon,* 160 F.3d 361, 363-64 (7th Cir. 1998)

10  (affirming award of 38% of class action settlement fund); *In re Airline Ticket Comm'n Antitrust*

11  *Litig.,* 953 F. Supp. 280, 286 (D. Minn. 1997), *aff'd in part, rev'd and remanded on other grounds,*

12  268 F. 2d 619 (8th Cir. 2001) (awarding "without hesitation" attorneys' fees of 33% of the $86

13  million settlement fund); *In re Lorazepam & Clorazepate Antitrust Litig.,* 2003 WL 22037741, *8

14  (D. D. C. 2003) (awarding class counsel 30% of the common fund); *In re Rite Aid Corp. Sec. Litig.,*

15  146 F. Supp. 2d 706, 735-36 (E. D. Pa. 2001) (awarding class counsel 25% of $193 million common

16  fund); *In re Vitamins Antitrust Litig.,* No. 99-197, 2001 WL 34312839, *12 (D.D.C. 2001)

17  (determining that the one-third award was reasonable and granting class counsel fees in the amount

---

0944, C 01-2629, C 01-2759, C 01-3447, C 01-4292 (N.D. Cal., Oct. 3, 2002) (Breyer, J.) (22.6%: $24 million fee, $107 million fund).

[8] *See also Hillis v. Equifax, et al.,* 1:04-CV-3400-TCB (N.D. Ga.) and *Slack v. Fair Isaac Corp., et al.,* 1:07-CV-314-TCB (N.D. Ga) wherein the Court on June 12, 2007 entered a Final Judgment approving a class action settlement of a similar CROA action against credit reporting companies competing with defendants CIC and Experian. Class Counsel were awarded $4 million in attorney's fees and expenses in the non-cash settlement.

1    of $123,188,032 plus interest, or approximately 34% of the total estimated settlement amount in

2    antitrust price fixing litigation).

3          The results obtained by Class Counsel demonstrate that the requested attorneys' fees are fair

4    and appropriate.    First, as stated above, the results obtained are considerable under the

5    circumstances:  Class Counsel enforced the remedial aspects of CROA and obtained a minimum

6    value of $70 million in Settlement Consideration in a case where defendants denied any wrongdoing,

7    where the *Helms* court denied class certification, and where this Court hinted it would do the same.

8    See December 27, 2006 Order, Doc. No. 77 at 5:10-12. Moreover, the settlement release is narrowly

9    crafted to "avoid vague language" and is limited to claims based on violation of CROA and claims

10   "where the stated basis of the claim is about improvement of a consumer's credit record, history, or

11   rating." Order Certifying Tentative Settlement Class, et al., Doc. No. 137, 10:12-13.  Accordingly,

12   this limited release preserves any additional claims a class member may have against the defendants.

13   In sum, the ample size of the settlement consideration, the remedial relief and the complexity of the

14   case in which it was obtained strongly support the requested fee and expense amount.  More

15   specifically, the obligations imposed upon the defendants under the terms of the settlement constitute

16   real and quantifiable value to the class members and should be included in determining the total

17   economic value provided to the class by virtue of the settlement. See *Shaw v. Toshiba Amer. Info.*

18   *Sys., Inc.,* 91 F. Supp. 942, 960 (E. D. Tex. 2000) ("A settlement should not be disapproved simply

19   because it contains an in-kind benefit component if the benefits are of real, economic value to the

20   class members.)

21          Second, this settlement was obtained in the face of significant risk.  Unlike the situation in

22   many consumer class actions, Class Counsel did not have the benefit of a body of cases or

1    administrative rulings interpreting and implementing CROA.  Although there was a summary

2    judgment entered in favor of plaintiff in the *Helms* case, an interlocutory appeal of that judgment was

3    granted and counsel for defendants repeatedly indicated that defendants would vigorously fight

4    against application of CROA to their business practices.

5           More importantly, the Class faced substantial hurdles in obtaining class certification and

6    establishing liability.  Even if plaintiff was successful in this action, the risks of litigation would have

7    continued through appeals.  The *Helms* action also faced a pending appeal and continued litigation

8    if the case was returned to the trial court.  Post-trial motions and appeals of any substantial verdict

9    were a virtual certainty.  See *In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D. Ohio

10   1983) (recognizing difficulties of proof and likelihood of costly trial on the merits).

11          Third, this case was undertaken by Class Counsel on a contingent fee basis against worthy

12   and well-financed opponents.  Class Counsel expended considerable time and resources with no

13   assurance that they would receive any compensation. Defendants consistently took the position that

14   Class Plaintiff could not establish liability under CROA or maintain this matter as a class action.

15   Defendants are large companies with extremely skilled counsel to aid in their defense.[8]  Class

16   Counsel's work was neither easy nor assured of success.

17          Fourth, it is well-known that nationwide consumer class cases are complex and difficult to

18   litigate.  Here, the case was protracted and defendants raised substantial issues concerning whether

19   the alleged practices violated CROA, and whether the case could be certified and maintained on a

---

[8]  That each defendant is represented by a top defense firm - Jones Day - is another factor to consider in evaluating the value of Class Counsel's services. *See, e.g., Arenson v. Board of Trade,* 372 F. Supp. 1349, 1354 (N.D. Ill. 1974) (quality of opposing counsel is important in evaluating the quality of the work done by plaintiffs' counsel).

1   nationwide class basis. (Indeed, defendants prevailed at the trial court level in *Helms* on the class

2   issue.) There was no guarantee that plaintiff would ultimately prevail on any of those issues.

3          Fifth, the fee is reasonable when compared to customary private contingency fee agreements.

4   In such cases, customary percentage fee agreements usually range between 30% and 40% of the

5   recovery. *See Blum*, 465 U.S. at 903 ("[i]n tort suits, an attorney might receive one-third of whatever

6   amount the plaintiff recovers.   In those cases, therefore, the fee is directly proportional to the

7   recovery."); *Kirchoff v. Flynn*, 786 F.2d 320, 232 (7th Cir. 1986) (observing that "40% is the

8   customary fee in tort litigation" and noting with approval a contract providing for a one-third

9   contingent fee if the case settled prior to trial); *In re M.D.C. Holdings Sec. Litig.*, [1990 Transfer

10  Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474 at 97,490 (S.D. Cal. 1990) ("[i]n private contingent

11  litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.")[9]

12  Thus, customary contingent fee agreements obtained in the private marketplace, which range

13  between 30% to 40% of the recovery, also validate the very small percentage requested in this case.

14         In addition, the mediator has filed an affidavit which addresses the timing of the fee

15  negotiations. As in *Hanlon*, 150 F.3d 1011 (which awarded fees in a non-cash settlement), Class

16  Counsel and defendants did not negotiate or discuss attorneys' fees until after the parties agreed on

17  the class settlement. Max Affid., ¶ 5. This process helped to safeguard the interests of the class.

18  *See In re Prudential Ins. Co.*, 962 F.Supp. 572, 577 (D. N.J. 1997).  The parties could not agree on

19  fees and expenses, and Mr. Max submitted a final "mediator's proposal" in that regard to the parties

20  in late October 2005. The parties ultimately accepted the proposal and agreed that defendants would

---

[9] As noted in *Vizcaino*, although evidence of such private agreements is not determinative, it can be "probative of the fee award's reasonableness." 290 F.3d at 1050.

1    not oppose an award of fees and expenses of up to $2.55 million.  As Mr. Max's affidavit states, he

2    recommends "the settlement to the Court as being fair, reasonable and adequate in my opinion."

3    Max Affid., ¶ 10.

4           Unlike the situation in *Hanlon*, however, Mr. Max's role included evaluating the benefits of

5    the settlement, and thus he was in a position to ascertain whether $2.55 million was an appropriate

6    attorney's fee.  As explained in *Hanlon*, 150 F.3d at 1029, the district court may give weight to the

7    mediation proceeding without abrogating the Court's duty to determine independently whether a fee

8    award is proper.  As discussed below with respect to the lodestar cross-check, although a mediator's

9    recommendation is not the starting point for calculation of a fee award, a lodestar calculation can

10    derive further support from the mediator's recommendation.  In any event, it is appropriate for the

11    Court to rely "on the mediator as independent confirmation that the fee was not the result of

12    collusion or a sacrifice of the interests of the class."  *Id.* at 1029.

13         **D.**    **Consumer Class Actions Are Unpredictable and Recovery Was Far From**
14               **Assured.**

16           Class Counsel undertook to prosecute this highly complex and risky litigation on a wholly

17    contingent basis with no guarantee that their expenses would ever be recovered or their fees ever

18    paid.  They expended millions of dollars in professional time and expenses.  If Plaintiffs were

19    entirely unsuccessful, Class Counsel would have received no compensation for any of their efforts

20    and no reimbursement of the substantial expenses they incurred in prosecuting these claims on behalf

21    of the Class.

1     Despite the most vigorous and competent efforts of class counsel, success on the merits is

2     never guaranteed.  When success is achieved, a substantial award is warranted.  As the court

3     recognized in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967):

4                 The effective lawyer will not win all of his cases, and any
5                 determination of the reasonableness of his fees in those cases in
6                 which his client prevails must take into account the lawyer's risk of
7                 receiving nothing for his services.  Charges on the basis of a minimal
8                 hourly rate are surely inappropriate for a lawyer who has performed
9                 creditably when payment of any fee is so uncertain.
10
11    *See also Meshel v. Nutri/System, Inc.*, 102 F.R.D. 135, 140 (E. D. Pa. 1984) ("The contingent nature

12    of the fee must be taken into account by us in fixing the final fee.").

13    The records of federal courts are filled with complex cases that have been unsuccessful.

14    Class Counsel faced the significant risk that plaintiff's claims would suffer dismissal on the merits

15    or reversal upon appeal.  Class Counsel here assumed all litigation risks.  Class Counsel also faced

16    the financial resources and legal talent of several large corporations and their defense firm.

17    Counsel's risks were increased because of the enormous resources available to the opposing parties.

18    **E.      The Result Under A Percentage-Of-The-Fund Approach Is Confirmed By A**
19    **         Lodestar Cross-Check.**
20
21    The propriety of the requested fee under a percentage-of-the-fund approach is further

22    confirmed by a cross-check of Class Counsel's lodestar, as was done in *Vizcaino*, 290 F.3d at 1051.[10]

23    The Lowe and Saveri Declarations[11] collectively establish: (1) the number of hours expended; (2)

24    the applicable lodestar; and (3) the reasonable and necessary expenses incurred.  The attorney's fees

---

[10]   This lodestar has been obtained by multiplying the number of hours worked by plaintiff's counsel by a current hourly rate.  Use of current hourly rates for all hours billed is a permissible way to account for delay in payment. *See Vizcaino*, 290 F.3d at 1051; *WPPSS*, 19 F.3d at 1305.

[11]   The Declaration of R. Alexander Saveri is filed contemporaneously herewith.

1    are calculated "according to prevailing market rates" in the relevant legal community. *Blum*, 465

2    U.S. at 894.    Therefore, the courts apply the market rate of attorneys practicing in the forum

3    community, not the rates out-of-state counsel charge. *Gates v. Deukmejian,* 987 F.2d 1392, 1405

4    (9th Cir. 1992). The Lowe Declaration identifies the attorneys who worked on the litigation and their

5    applicable local hourly rates as supplied by Mr. Saveri's Declaration. The Lowe Declaration also

6    identifies the expenses incurred by the firm.[12]    In sum, the aggregate lodestar is $2,688,647.50, and

7    the aggregate expense total is $47,642.86.

8          The requested fee of $2,502,357.14 ($2,550,000 minus $47,642.86 in expenses) constitutes

9    94% of the lodestar amount, a percentage well below the acceptable range of multipliers awarded

10   in complex cases of this type. *See Vizcaino v. Microsoft Corp.,* 290 F.3d at 1050-51 (upholding a

11   28% fee award that constituted a 3.65 multiple of lodestar), 1052-54 (noting district court cases in

12   the Ninth Circuit using multipliers as high as 6.2); *Keith v. Volpe*, 501 F.Supp. 403, 414 (C.D. Cal.

13   1980) (awarding 3.5 multiplier), *Conroy v. 3M, supra.* (awarding 2.1 multiplier).

14          The lodestar figure "may be adjusted upward or downward to account for several factors

15   including the quality of the representation, the benefit obtained for the class, the complexity and

16   novelty of the issues presented, and the risk of nonpayment." *Hanlon,* 150 F.3d at 1029; *see also*

17   *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975) (listing factors that may be relevant

---

[12]    Because Class Counsel's detailed time entries contain confidential information and attorney work product, they have been submitted to the Court *under seal.* Also note that objectors have no absolute right to discovery regarding a class settlement, including review of counsel's time records. *See Hemphill v. San Diego Asso. of Realtors,* 225 F.R.D. 616, 623 (S.D. Cal. 2005) (denying objectors' request for Class Counsel's time sheets), *Dehoyos v. AllState Corp.*, 240 F.R.D. 269, 335-36 (W.D. Tex. 2007) (rejecting objectors' request for production of time sheets, finding "these records contain privileged and non-discoverable information, including descriptions of attorney-client communications, joint prosecution information shared among counsel for plaintiffs, attorney work product reflecting the mental impressions of counsel and/or information from which the tactics and strategies employed by plaintiffs in this litigation could be inferred.") Thus, there is no requirement that counsels' detailed time and expense sheets be filed in the record.

1    to a lodestar/multiplier analysis, including "(1) the time and labor required; (2) the novelty and

2    difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other

3    employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

4    contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at

5    controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10)

6    the "undesirability" of the case; (11) the nature and length of the professional relationship with the

7    client and; (12) awards in similar cases).

8            As the Ninth Circuit noted in *WPPSS*, a risk multiplier to the base lodestar is appropriate to

9    "reward attorneys for taking the risk of non-payment by paying them a premium over their normal

10   hourly rates for winning contingency cases." 19 F.3d at 1299. The court also noted that the bar

11   against risk multipliers in statutory fee cases does not apply to common fund cases. *Id.* at 1299-

12   1300. The resultant increase is "a legitimate way of assuring competent representation for plaintiffs

13   who could not afford to pay on an hourly basis regardless of whether they win or lose." *Id.* In

14   *WPPSS*, the Ninth Circuit reversed the refusal to give a risk multiplier in an obviously risky case.

15   *Id.* at 1302.

16           Here, as noted in *Vizcaino,* 290 F.3d at 1051, the appropriate multiplier is affected by the

17   duration of the case, its complexity, and the risk in prevailing. In *Vizcaino,* the Ninth Circuit

18   provided an appendix demonstrating that fee awards in common fund cases that settled for $50 to

19   $200 million between 1996 and 2001 have included multipliers of 0.6 to 19.6 times the lodestar

20   amount, with the majority falling within the 1.0 to 4.0 range. *See Vizcaino,* 290 F.3d at 1051, and

21   n. 6 and appendix. This litigation, including *Helms,* has continued for nearly four years, was

22   extremely complex, it precluded counsel from accepting other matters and the risks were great. The

1    very small (in fact, "negative") multiplier of .94 is therefore appropriate, particularly where the fee

2    was proposed by the mediator.[13]

3        **F.      The Objections To The Proposed Fee Are Meritless.**

4        A handful of objectors (most of whom are represented by professional objectors or

5    "spoilers") – from a class of approximately 14 million – have challenged the proposed $2.55 million

6    fee and expense award to Class Counsel.[14]  The objections are generally the same and include the

7    following: (1) the proposed fee encourages "baseless" class action lawsuits; (2) the proposed fee is

8    disproportionate to the proposed settlement and unreasonable in terms of working hours; (3) the

9    proposed fee is exorbitant and unreasonable in relationship to the benefit to the consumer.  These

10   objections are all without merit.

11       This is not a "baseless" lawsuit.  The *Helms* Court found that ConsumerInfo.com is a credit

12   repair organization as defined by CROA but declined to certify a class because the potential damages

13   could be enormous in relation to the defendants' conduct.  Furthermore, defendants would not be

14   amending their business practices, providing free products, and paying administrative costs and

15   attorney's fees, if the consumers' actions were "frivolous."  Instead, defendants would have

16   proceeded with prosecuting the *Helms* appeal and would have continued to  vigorously defend this

17   action.  And, neither this court nor the *Helms* court would have allowed a "frivolous" case to

---

[13]  Moreover, based upon the number of hours devoted to this case and the applicable hourly rates, the requested fee award will also withstand a traditional loadstar analysis.

[14]  "Federal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 295, fn. 26 (E.D. Pa. 2003); *Scott v. Blockbuster, Inc.,* 2001 WL 1763966 *3 (Tex. Dist. Ct., 2001) ("The Court finds that Mr. [Lawrence] Schonbrun is aptly described by the moniker 'Professional Objector' and regards him as such...")

1    proceed. Additionally, the mediator likely would not have indicated his approval of the proposed

2    settlement to this Court and to the Eleventh Circuit if the actions were "frivolous."

3           A general accusation that fees are "excessive" or "exorbitant" has no merit. It is the burden

4    of the party opposing the request to submit specific objections to the fee. *Gates v. Dukmejian*, 987

5    F.2d 1392, 1404 (9th Cir. 1992). "Conclusory and unsubstantiated objections are not sufficient to

6    warrant a reduction in fees." *Lucas v. White*, 63 F.Supp.2d 1046, 1057-58 (N.D. Cal. 1999). It is

7    unlikely any of the objectors were aware at the time of their objection of the enormous amount of

8    work performed by Class Counsel in this matter. As noted above, the fees and expenses sought

9    represent only 3.6% of the minimum potential value of the Settlement Consideration and are

10    compensation for approximately 4800 hours of work and over $47,000 in expenses incurred over

11    nearly four years of litigation. Objectors who claim generally that the fees are "excessive" in

12    comparison to the benefit to the Class Members assume apparently that the value of that benefit is

13    zero, and theorize that Class Counsel did not "succeed" in the litigation. To the contrary, the benefit

14    to the Class Members consists of significant remedial changes to defendants' business practices, plus

15    up to $278 million in products available to Class Members.

16           As for the benefit to the class, this Court has already found the remedial relief to be "fair,

17    adequate and reasonable" and "the in-kind relief is reasonable in amount given the cost of similar

18    products offered for sale, and is considerable when aggregated over the more than 10 million

19    settlement class members." Order Certifying Tentative Settlement Class, et al., December 27, 2006,

20    Doc. No. 137, 8:20-21, 9:4-6. Furthermore, the Court has found the very narrow release negotiated

21    for the class "to be fair and reasonable." *Id.* at 10:14-28, 11:1-12.

1    Furthermore, there is nothing anomalous about Class members receiving in-kind

2    compensation while attorneys are paid in cash for their fees and expenses. That is exactly what

3    happened in the *Lobatz* and *Zucker* cases in the Ninth Circuit. It has also happened in other cases

4    involving in-kind settlements, including cases where state attorneys' general were the suing parties.

5    *See, e.g., Weiss v. Mercedes-Benz of N. America, Inc.,* 899 F.Supp. 1297, 1304 (D. N.J.), *aff'd,* 66

6    F.3d 314 (3d Cir. 1995); *States of N.Y. and Md. v. Nintendo of America, Inc.,* 775 F.Supp. 676, 679

7    (S.D.N.Y. 1991); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 352-54 (N.D. Ga.

8    1993); *In re Montgomery Cty. Real Estate Antitrust Litig.,* 83 F.R.D. 305, 319-23 (D. Md. 1979);

9    *Phemister v. Harcourt Brace Jovanovich, Inc.,* 1984-2 Trade Cas. (CCH) ¶ 66, 234 at 66, 995-98

10   (N.D. Ill. 1984); *In re Cuisinart Food Processor Antitrust Litig.,* 1983-2 Trade Cas. (CCH) ¶ 65, 680

11   at 69, 470 n.21 (D. Conn. 1983); *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 254-255,

12   110 Cal. Rptr. 2d 145, 169-70 (2001), *review denied.* As said in response to an objection in

13   *Domestic Air* that the action was a "lawyer's case" where counsel received an "exorbitant amount

14   of cash" while class members received certificates of questionable value, this objection "ignores the

15   value of the settlement and the financial incentive necessary to induce experienced and well-qualified

16   counsel to take on complex and time-consuming cases for the benefit of the public and for which

17   they may never be paid or even reimbursed for considerable out-of-pocket expenses." 148 F.R.D.

18   at 306.

19          G.      **The Expenses Are Reasonable And Should Be Reimbursed.**

20          Class Counsel also respectfully request that they be reimbursed for their litigation costs and

21   expenses incurred in the amount of $47,642.86, which are included in the $2.55 million fee and

22   expense award. Lowe Decl., ¶ 15. Under the common fund doctrine, Class Counsel are entitled to

Memorandum in Support of Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses
C04-1463-HRL                                    -23-

1    reimbursement of all reasonable out-of-pocket expenses incurred in prosecution of the claims and

2    in obtaining a settlement. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes*

3    *Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977). The Declaration submitted by Class Counsel

4    establishes all of the expenses for which reimbursement is sought. Lowe Decl., ¶ 15.[13] All of these

5    expenses were reasonable and all were incurred for the benefit of the class. Indeed, the sum sought

6    is remarkably low and under-inclusive, as Class Counsel expect to incur additional expenses

7    implementing the settlement if final approval is granted. And, in light of the professional objectors

8    who have appeared in this case, additional expenses on appeal are likely.

9    **Conclusion**

10    In conclusion, the negotiated fee is reasonable in light of the percentage of recovery, overall

11    lodestar, the mediator's proposal, and the procedural protections afforded to the class under the

12    structured settlement negotiation procedure. Accordingly, Plaintiff respectfully requests that the

13    Court enter an award to Plaintiff's Counsel of $2.55 million in attorneys' fees, including

14    reimbursement of expenses incurred to prosecute this case.

15    Dated: June 14, 2007

16                                                 Respectfully submitted,

17

18                                                 LOWE & GRAMMAS LLP

19

20

21

22                                                 E. Clayton Lowe, Jr.

23                                                 One of the Attorneys for the Plaintiff

24

---

[13] Like Counsel's time records, the detailed expense records are submitted to the Court *under seal.*

1    **OF COUNSEL:**
2
3    E. Clayton Lowe, Jr., Esq.
4    Peter A. Grammas, Esq.
5    LOWE & GRAMMAS LLP
6    Liberty Park
7    1952 Urban Center Parkway
8    Birmingham, Alabama 35242
9    (205) 380-2400
10    (205) 380-2408 (fax)
11    clowe@lowegrammas.com
12    pgrammas@lowegrammas.com
13
14    Gordon J. Finwall, Esq.
15    FINWALL LAW OFFICES
16    1501 The Alameda
17    San Jose, California 95126
18    (408) 350-4041
19    (408) 350-4042 (fax)
20    gordon@finwalllaw.com
21
22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following via email and by depositing a copy of same in the United States Mail, properly addressed and first-class postage prepaid, this ___14th___ day of ___June___, 2007:

Richard J. Grabowski, Esq.
JONES DAY
3 Park Plaza, Suite 1100
Irvine, California 92614-8502
rgrabowski@jonesday.com

Jerome R. Doak, Esq.
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
jrdoak@jonesday.com

Raymond Cooper
Putative Class Member, pro se
Post Office Box 22327
Indianapolis, IN 46222-0327
indycollectors@aol.com

John William Davis, Esq.
Law Office of John W. Davis
4445 Eastgate Mall
Second Floor
San Diego, CA 92121
john@johnwdavis.com

Steven F. Helfand, Esq.
Helfand Law Offices
582 Market Street
Suite 1400
San Francisco, CA 94104
steven@stevenhelfand.com

1    Daniel C. Girard
2    Steven G. Tidtrick
3    Girard Gibbs LLP
4    601 California Street, Suite 1400
5    San Francisco, CA 94108
6    girardgibbs@girardgibbs.com
7
8    J. Garrett Kendrick
9    C. Benjamin Nutley
10   Kendrick & Nutley
11   1055 E. Colorado Blvd., Fifth Floor
12   Pasadena, CA  91106
13   jgk@private-ag.com
14
15   Darrell Palmer
16   Law Offices of Darrell Palmer
17   603 North Highway 101, Suite A
18   Solana Beach, CA 92075
19   darrell.palmer@cox.net
20
21   Lawrence W. Schonbrun
22   Law Offices of Lawrence W. Schonbrun
23   86 Eucalyptus Road
24   Berkeley, CA 94705
25   lschon@inreach.com
26
27   Kenneth E. Nelson
28   Nelson Law Firm, PC
29   2900 City Center Square
30   1100 Main Street
31   Kansas City, MO 64105
32   (816) 421-7225
33   (816) 421-3339 - fax
34
35   Edward Frank Siegel
36   Attorney at Law of Edward F. Siegel
37   27600 Chagrin Blvd., Suite 340
38   Cleveland, OH 44122
39   efsiegel@efs-law.com
40

1  David Clark Zucker
2  28494 Westinghouse, Suite 310
3  Santa Clarita, CA 91355
4  zuckerlaw@sbcglobal.net
5
6
7
8
9                                    OF COUNSEL
10

Memorandum in Support of Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses
C04-1463-HRL

1   E. Clayton Lowe, Jr. (*admitted pro hac vice*)
2   Peter A. Grammas (*admitted pro hac vice*)
3   LOWE & GRAMMAS LLP
4   Liberty Park, 1952 Urban Center Parkway
5   Birmingham, Alabama 35242
6   (205) 380-2400
7   (205) 380-2408 (facsimile)
8
9   Attorneys for Plaintiff CHUCK BROWNING
10
11
12          **IN THE UNITED STATES DISTRICT COURT**
13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14                      **SAN JOSE DIVISION**
15

| | | |
|---|---|---|
| **CHUCK BROWNING,** | ) | **CIVIL ACTION NO.: 04-1463 HRL** |
| **individually and on behalf of** | ) | |
| **all persons similarly situated,** | ) | **CLASS ACTION** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **DECLARATION OF** |
| | ) | **E. CLAYTON LOWE, JR. IN SUPPORT** |
| **YAHOO! INC.,** | ) | **OF PLAINTIFF'S MOTION FOR** |
| **CONSUMERINFO.COM, INC., and** | ) | **ATTORNEYS' FEES AND** |
| **EXPERIAN NORTH AMERICA, INC.** | ) | **REIMBURSEMENT OF EXPENSES** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

30
31
32          I, E. Clayton Lowe, Jr., declare as follows:

33          1.       I am a partner in the law firm of Lowe & Grammas LLP.  I am submitting this

34   declaration in further support of Plaintiff's Motion for Attorneys' Fees and Reimbursement of

35   Expenses.

36          2.       My firm and I are counsel of record for the plaintiffs in this action and in *Helms* v.

37   *ConsumerInfo.com, Inc.*, No. CV-03-HS-1439M (N.D. Ala.).  As the Court is aware, the proposed

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL

1    settlement resolves both this case and the *Helms* case. Accordingly, the cases are hereinafter

2    sometimes collectively referred to as "the litigation."

3          3.      My firm and I were appointed class counsel in the *Browning* case by order of this

4    Court dated December 27, 2006. We were previously serving as interim class counsel under a prior

5    order.

6          4.      This settlement, if confirmed, will conclude almost four years of hard fought litigation

7    regarding, in substantial part, whether the federal Credit Repair Organizations Act, 15 U.S.C. §1679,

8    et seq. ("CROA") applied to certain representations and conduct utilized by the defendants to market

9    and sell credit monitoring, credit scores, credit reports and other products and services.

10         5.      Throughout this litigation, the defendants denied the applicability of CROA and

11   opposed at every juncture plaintiff's efforts to establish violations of CROA. The defendants are

12   represented by one of the world's largest law firms, Jones Day. The defense involved attorneys from

13   Jones Day's offices in Irvine, San Francisco, Dallas, New York, Atlanta and probably others. My

14   firm withstood and countered the defendants' onslaught of paper and manpower, prevailed on

15   various motions, and ultimately achieved this settlement. The number of hours expended by my firm

16   were necessitated, in part, by the vigorous and well funded opposition mounted by the defense.

17   Plaintiff's counsel requested and reviewed hundreds of thousands of documents, audio tapes, and

18   other information produced by the defendants and others. Plaintiff's counsel conducted five

19   depositions in California and four in Alabama. We also subpoenaed information from non-parties.

20   The parties also fully briefed the major issues in this litigation and were well aware of the strengths

21   and weaknesses in their positions before negotiating the subject settlement. All of the information

22   produced through the discovery in the litigation was necessary to establish the plaintiffs' claims and

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL                                    2

1    this discovery was instrumental in bringing about the settlement of this litigation.[1]

2          6.      In August of 2004, the parties first attempted to mediate a resolution of the litigation.

3    The efforts failed.  The parties also attempted, as required by this Court, to engage in an early neutral

4    evaluation.  That effort also failed.  However, after the *Helms* court granted partial summary

5    judgment in favor of plaintiff but denied class certification, and ConsumerInfo.com was allowed to

6    take an interlocutory appeal to the Eleventh Circuit Court of Appeals, the Eleventh Circuit required

7    the parties to engage in mediation in compliance with that Court's alternative dispute resolution

8    program.    In this same time period, this Court permitted plaintiff Browning to add

9    ConsumerInfo.com, Inc. ("CIC") and  Experian North America, Inc. ("Experian") as party

10   defendants.  Consequently, all of the parties, CIC, Yahoo! and Experian, agreed to engage in

11   mediation beginning in September 2005, with Rodney A. Max, Esq. serving as the mediator

12   approved by the Eleventh Circuit mediation program.

13         7.      After several meetings, the parties agreed on the substance of the class relief and then

14   began discussions regarding attorney's fees.  However, the parties could not agree on fees and the

15   negotiations broke off.  In late October 2005, Mr. Max issued a mediator's proposal which if rejected

16   by any party would have caused the mediation to end and the litigation would have proceeded in this

17   Court and in the Eleventh Circuit.  Mr. Max's number was a significant compromise from those

18   suggested by the parties.  However, the parties accepted the mediator's proposal and then began the

19   extended process of preparing the settlement documents.

20         8.      Notably, the mediator's proposal included the amount of attorneys' fees and expenses

---

[1] Indeed, the parties agreed that discovery conducted could be used in either case so as not to duplicate efforts.

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL                              3

1   now being proposed to this Court for approval.   More specifically, the requested fee and expense

2   award is the result of extensive arms-length negotiations and is based upon the figure proposed by

3   the mediator.   Indeed, the proposal was accepted by plaintiffs and plaintiffs' counsel because it

4   approximated the lodestar and expenses plaintiffs' counsel anticipated would be incurred in

5   prosecuting the case through settlement.   Accordingly, it is my opinion that this negotiated fee is

6   reasonable and was fairly negotiated and agreed upon.

7          9.       In addition to bringing an end to almost four years of expensive and time consuming

8   litigation in two districts, the settlement provides significant relief to the class.   Most importantly,

9   in my opinion, the settlement accomplishes the remedial goals of CROA in that the revisions to

10  defendants' marketing practices will serve "to protect the public from unfair or deceptive advertising

11  and business practices..." 15 U.S.C. §1679(b)(2).   Indeed, the remedial aspects of this settlement are

12  crafted to prevent defendants' ongoing practices from causing them to fall within CROA.[2]

13         10.      In addition to the remedial relief, the settlement provides class members with

14  services/products they have indicated they have a propensity to purchase.   However, the class is not

15  required to purchase anything from defendants in order to obtain these benefits.   The class members

16  are also given a choice of benefits such that they will not have to do business with defendants in the

17  future if they desire not to do so.   Therefore, this relief should not be deemed to fall within the

18  definition of a "coupon" settlement in that class members will not be required to purchase any

---

[2]   CROA allows the FTC to enforce violations of the Act.  15 U.S.C. §1679(c).   However, the FTC made no effort to involve itself in this matter, even in light of the *Helms* Court's findings that CIC was a credit repair organization.  Plaintiffs here, through their private litigation efforts, have accomplished the remedial purposes of CROA by forcing defendants to remove from their advertising and websites representations deemed by plaintiffs to be offensive to CROA.  These non-pecuniary benefits, in the form of commitments to change the practices challenged in this action are instrumental in vindicating class members' rights under CROA, are a primary source of value to the class, and a substantial basis for awarding a fee to plaintiffs' counsel.

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL                                    4

1   additional services or items to receive a benefit.[3]

2         11.    Defendants, CIC and Experian, have also agreed to pay costs of notice and

3   administration of the settlement in addition to the remedial and in-kind relief, plus attorneys' fees

4   and expenses as awarded by the Court.

5         12.    It is also important to recognize the very limited scope of the release provided to the

6   defendants in this case.  Rather than releasing any and all claims the class may have against the

7   defendants, the release is narrowly tailored to relate only to legal and equitable claims "based on any

8   released party's violation of the Federal Credit Repair Organizations Act," and/or "where the stated

9   basis of the claim is about improvement of a consumer's credit record, history or rating."

10  Furthermore, any class member unhappy with the settlement may opt out to pursue their individual

11  CROA claim against the defendants.  (Amended Agreement for Settlement, Section III H.)

12        13.    Plaintiff's counsel's efforts in obtaining this significant relief justify the fee requested.

13  The total number of hours expended on this litigation by my firm from inception to the present is

14  4,798.7.  The total lodestar amount during this period for attorney time, calculated at the prevailing

15  market rate, is $2,688,647.50.   The total lodestar is calculated as follows:

| Timekeeper | Hours | Hourly Rate | Lodestar Amount |
|------------|-------|-------------|-----------------|
| Lowe | 2652.8 | $625 | $1,658,000.00 |
| Grammas | 722.2 | $550 | $ 397,210.00 |
| Hitson | 586.1 | $475 | $ 278,397.50 |
| Dana | 837.6 | $400 | $ 335,040.00 |
| Totals | 4,798.7 | | $2,688,647.50 |

22  The prevailing market rate for attorneys in the San Jose/San Francisco area having similar experience

---

[3] See *In Re Wireless Telephone Federal Cost Recovery Fees Litigation*, 2004 WL 3671053 *4 (W.D. Mo.)("This is not a "coupon" settlement.  Class members will not be required to purchase any additional services or items to receive a benefit or cash payment.")

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL                              5

1    to myself and others in my firm who performed work on this case is established by the Declaration

2    of Rick Saveri, Esq. filed contemporaneously herewith.[4] My firm's detailed time records are being

3    submitted to the court *under seal* because such records contain confidential and attorney work

4    product information. (And, such information is not otherwise discoverable by objectors.) The time

5    records reflect the enormous amount of work performed in this litigation, including work related to

6    briefs, motions, hearings, document production and conducting five depositions in California and

7    four in Alabama.

8        14.    This time is based on the books and records of my firm maintained in the ordinary

9    course of business and is prepared from contemporaneous time records.

10        15.    The expenses incurred to date by my firm pertaining to the litigation are $47,642.86.

11    These unreimbursed expenses are reflected in the books and records of the firm as maintained in the

12    ordinary course of business. An itemized list of expenses is also being provided to the court *under*

13    *seal*. My firm made its usual and customary charges for expenses it paid or incurred in the litigation

14    and added no surcharge to any expense. These charges are entered upon the firm's books and

15    records from expense vouchers, bills, invoices and/or check records and are an accurate record of

16    the expenses incurred. Expenses of $47,642.86, in light of the travel, extensive discovery and

17    document production, are, in my opinion, remarkably low for litigation of this scope and duration.

18        16.    All of the hours charged by my firm were reasonably expended. Efforts were made

19    to remove duplicative entries in work performed and to exclude hours that could be considered

---

[4] In addition to the Saveri declaration, please see attached for the Court's consideration a true and correct copy of the "Daily Report" for San Francisco which reports an hourly rate index for individual attorneys listed in fee requests of cases filed in U. S. Bankruptcy Court and other federal courts in 2006.

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL           6

1    excessive, redundant or otherwise unnecessary.  Additional time and expenses are expected to be

2    incurred during implementation of the settlement, if approved.  Further, in light of the history of the

3    professional objectors who have appeared in this case, I expect my firm to incur significant

4    additional time and expense in responding to an appeal by objectors.  However, we do not seek

5    reimbursement for such time and expenses.

6          17.    The negotiated fee award also closely approximates the fee plaintiff's counsel would

7    have claimed on a lodestar basis.  In this case, the fee requested is neither too large nor too small in

8    light of the hours devoted to this case.  Both a lodestar calculation as well as a percentage of the fund

9    calculation result in a "reasonable" fee.  Moreover, it is my contention that the requested fees and

10    expenses are reasonable in light of the nature of the case, the risks involved in the litigation, the

11    results obtained, the mediation process and the "mediator's proposal" that led to the fee agreement.

12          18.    Based upon the foregoing, and the other evidence available to the Court in this matter,

13    I respectfully request the Court to enter an Order awarding my firm attorneys' fees and expenses in

14    the amount of Two million, five hundred and fifty thousand dollars ($2,550,000).

15          I declare under penalty of perjury of the laws of the United States that the foregoing is true

16    and correct.

17          Executed this 14th day of June, 2007.

18

19

20                            E. CLAYTON LOWE, JR.

21

22

Declaration of E. Clayton Lowe, Jr.
C04-1463-HRL               7

• Law.com Home    • Newswire    • LawJobs    • CLE Center    • LawCatalog    • Our Sites    • Advertise    ALM

**DAILY REPORT**
A SMART READ FOR SMART READERS

Login | Subscribe
1:08 P.M. EST
Wednesday June 6, 2007

Powerful. Smart. Necessary.
See for yourself...
TWO WEEKS FREE!
www.dailyreportonline.com

**Print Subscribers:**
Get an online password for free.
Call 1-877-256-2472 or
email almcirc@alm.com


Georgia Bench Book
FREE TOUR!

| Home | News Sections | Court Opinions | Court Calendars | Public Notices | Bench Book | How to Advertise | Reader Services |

Search Site:    ◉ News Articles   ○ Court Opinions   ○ Court Calendars   ○ Public Notices   ○ Consumer Alerts   [Go]  help

Daily Report home page • Special Reports • Going Rate 2007 • Search Results

*A note about the hourly rate index: The billing rates at the end of each row are the individual timekeeper's 2006 rates listed in fee requests of cases filed in U.S. Bankruptcy Court and other federal courts. If the attorney charged different rates during the same year, only the highest rate is listed.*

**Showing 1 through 19 of 19 results. (Click a firm or city to bring up related rates)**

| Name | Title | Firm | City | Billing Rate |
|---|---|---|---|---|
| Pollock, Thomas R. | Partner | Paul, Hastings, Janofsky & Walker | San Francisco | $750 |
| Goteiner, Neil A. | Partner | Farella Braun & Martel | San Francisco | $745 |
| Schlinkert, William J. | Partner | Farella Braun & Martel | San Francisco | $695 |
| Gloster, Dean M. | Partner | Farella Braun & Martel | San Francisco | $675 |
| Brown, Donald W. | Partner | Covington & Burling | San Francisco | $640 |
| Holden Jr., Frederick D. | Partner | Orrick, Herrington & Sutcliffe | San Francisco | $605 |
| Frank, Michael T. | Partner | DLA Piper | East Palo Alto, San Francisco | $540 |
| McKane, Mark E. | Partner | Kirkland & Ellis | San Francisco | $505 |
| Roche, Laura C. | Associate | Farella Braun & Martel | San Francisco | $475 |
| Joesten, Nan E. | Partner | Farella Braun & Martel | San Francisco | $465 |
| Agenbroad, Aaron L. | Associate | Jones Day | San Francisco | $430 |
| Dunn, Heather | Associate | DLA Piper | San Francisco | $425 |
| Keegan, Christopher W. | Associate | Kirkland & Ellis | San Francisco | $415 |
| White II, Jack L. | Associate | Kirkland & Ellis | San Francisco | $385 |
| Gerking, Tyler C. | Associate | Farella Braun & Martel | San Francisco | $355 |
| Tognoli, Christine D. | Associate | Paul, Hastings, Janofsky & Walker | San Francisco | $325 |
| Christian, Ryan M. | Associate | Kirkland & Ellis | San Francisco | $315 |
| Kim, Jenny | Associate | DLA Piper | San Francisco | $260 |
| Allhoff, Hans J. | Associate | Kirkland & Ellis | San Francisco | $260 |

**Receive Daily Headlines**

Your email here   [Submit]

Atlanta, GA

Get the 10 day forecast

89°F
Partly Cloudy
Feels Like: 87°F
Humidity: 32%
Wind: WSW at 6 mph

Enter city/zip   [GO!]

Airport Delays
Sporting Events
Pollen Reports

Download Desktop Weather

**Classified Ads**

**ARE NOW ONLINE!**

You're used to seeing them in the print edition. Now, the *Daily Report* posts classified ads on its Web site!
Click here to read the latest.

• Search Jobs
• Search Real Estate
• Search Legal Services
• Search Merchandise

• Post a classified ad •

**Featured Advertisement**

**TRIAL ATTORNEY**

Cherokee County general practice seeks trial attorney with 3 or more years of criminal/domestic experience. Equity potential.

Fax resume to 770-479-0373.



Davis Search
1050 Crown Pointe Pkwy
Ste. 260, Atlanta, GA 30338
770-671-8345
www.davissearch1.com



1   E. Clayton Lowe, Jr. (admitted pro hac vice)
    Peter A. Grammas (admitted pro hac vice)
2   LOWE & GRAMMAS LLP
    Liberty Park, 1952 Urban Center Parkway
3   Birmingham, Alabama 35242
    Telephone: (205) 380-2400
4   Facsimile: (205) 380-2408

5   Attorneys for Plaintiff CHUCK BROWNING
    and the Settlement Class

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

| | |
|---|---|
| 12  **CHUCK BROWNING** | Civil Action No.: 04-1463 HRL |
| **individually and on behalf of all persons** | |
| 13  **similarly situated,** | <u>**CLASS ACTION**</u> |
| 14  **Plaintiff,** | **DECLARATION OF R. ALEXANDER** |
| | **SAVERI** |
| 15 | |
| 16  **YAHOO! INC.,** | |
| **CONSUMERINFO.COM, INC., and** | |
| 17  **EXPERIAN NORTH AMERICA, INC.** | |
| **Defendants.** | |
| 18 | |
| 19 | |

20

21        I, R. Alexander Saveri, declare as follows:

22        1.        I am an attorney licensed to practice in the State of California.  I am a member

23   of this Court and the United States Court of Appeals for the Ninth Circuit.  I am a member

24   of the law firm of Saveri & Saveri, Inc. located in San Francisco, California.  My firm

25   specializes in complex, multi-district and class action litigation.  By virtue of my practice and

26   experience in this and other Courts in California, I have personal knowledge of the market

27   rates and fees charged by consumer class action attorneys in the San Francisco and San Jose

28   areas of the Northern District of California, among others.

                                        1

2.      I know E. Clayton Lowe, Jr. and his law firm from previous collaboration as co-counsel in another national consumer class action lawsuit.  Therefore, I am familiar with their background, experience, work and reputation.

3.      The prevailing market rate for attorneys' fees in the forum community for similar services of lawyers of reasonably comparable skill and experience to those at Lowe & Grammas LLP are between $400 and $625.  It is my opinion that the appropriate hourly rates, based on the market rates of attorneys practicing in the forum community, is $625 for E. Clayton Lowe, Jr. (23 years of practice), $550 for Peter A. Grammas (16 years of practice), $475 for Brent D. Hitson (11 years of practice), and $400 for John G. Dana (9 years of practice).

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 6th day of June, 2007, in San Francisco, California.


_R. Alexander Saveri_
R. Alexander Saveri

SavLoveDec.wpd

2

DECLARATION OF R. ALEXANDER SAVERI