* E-filed 11/16/07 *

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CHUCK BROWNING, individually and on
behalf of all persons similarly situated,

          Plaintiff,

     v.

YAHOO! INC.; CONSUMERINFO.COM,
INC.; and EXPERIAN NORTH AMERICA,
INC.;

          Defendants.

_____/

Case No. C04-01463 HRL

**ORDER GRANTING JOINT MOTION
FOR FINAL APPROVAL OF AMENDED
SETTLEMENT AND DISMISSING
ACTION WITH PREJUDICE**

Re: Docket Nos. 132-2, 176, 178

## I.    INTRODUCTION

Chuck Browning saw on Yahoo!'s website the offering for a service called Yahoo! Credit
Manager.  The offering allegedly represented that, by subscribing to it, he would be able to
"improve" his credit score, to actually "learn how to boost it in seconds."  Browning subscribed (for
$79.95 per year).  The Credit Manager service was provided by Yahoo!'s purported "co-branded
partner," ConsumerInfo.com, Inc. ("CIC").  CIC is owned by Experian, one of the country's major
credit reporting organizations.

The Credit Repair Organization Act ("CROA"), 15 U.S.C. §1679, is intended to protect the
public from unfair or deceptive advertising and business practices by credit repair organizations.
Specifically, CROA focuses on providing consumers of credit repair organization

United States District Court

For the Northern District of California

services with information necessary to make informed decisions concerning the purchase of such services. To that end, a company in the "credit repair" business must adhere to a host of specified regulations: e.g., (1) a written contract with the consumer specifying the payment terms, and (2) full disclosure of the consumer's statutory rights - including cancellation options.

No one disputes that neither Yahoo!, CIC, nor Experian complied with the requirements of CROA. The real questions in the litigation that followed were: (1) whether or not Defendants were credit repair organizations subject to CROA; (2) whether the claims Browning ultimately brought were appropriate for class action treatment; and, finally, (3) what was the effect here of an earlier Alabama federal court's denial of class certification against CIC for CROA violations?

As this court intends to approve the settlement discussed at length below, it does not formally reach the first or third question. As to the second, it answers in the affirmative with respect to a settlement class.

//

## II.     PRESENT PROCEDURAL POSTURE

In February 2006, the parties jointly moved for certification of the tentative settlement class and preliminary approval of the proposed settlement. After the Preliminary Approval hearing and several interim orders, the parties eventually proffered an Amended Settlement Agreement. The Amended Settlement entirely resolves the claims brought by Browning, on behalf of himself and the settlement class, against CIC, Experian and Yahoo!. Defendants agree to certification of the settlement class and to offer certain relief but deny that they fall within the Credit Repair Organization Act's definition of a "credit repair organization," deny all claims alleged, and deny that the case could be certified as a class action for trial purposes.

On December 27, 2006, this Court certified the tentative settlement class, preliminarily approved the parties' Amended Settlement Agreement, approved and directed a plan for giving notice to class members, appointed Class Counsel, and appointed the Settlement Administrator. ("Prelim. Approval Order"). The Court also set deadlines for objecting to the settlement and for requesting exclusion from the settlement class.

On July 31, 2007, the Court held a Final Fairness Hearing at which the moving parties and certain objectors appeared and were heard.  The order that follows addresses Plaintiff's motion for an award of attorney's fees and expenses, the objections made by class members to the Amended Settlement, and the joint motion for Final Approval of the Amended Settlement.

//

### III.   BACKGROUND

A.     The *Helms* Litigation

The direct antecedent to this case is a proposed class action filed in Alabama federal court captioned, *Helms v. ConsumerInfo.com, Inc.*, No. CV-03-HS-1439-M (N.D. Ala., filed June 17, 2003).  The *Helms* suit alleged (1) violations of CROA; (2) unjust enrichment and money had and received; (3) constructive trust; and (4) conspiracy (Complaint ¶¶ 22-42).   As with *Browning*, the claims against CIC arose out of statements made on its website which allegedly subjected CIC to CROA regulations.

The *Helms* case was litigated for more than two years, with both parties conducting depositions, answering interrogatories, and responding to document requests.  In 2004, the *Helms* parties filed cross motions for summary judgment, and Plaintiff moved for class certification.  The *Helms* court granted in part and denied in part both motions for summary judgment.  *Helms v. ConsumerInfo.com, Inc.*, 436 F. Supp. 2d 1220, 1238-39 (N.D. Ala. 2005).  That court held that "the representations of defendant imply that its services will help customers improve their credit ratings," *id*. at 1232, and that CIC was therefore within the statutory definition of a "credit repair organization." *Id*. at 1229-34.  However, because this determination was an issue of first impression, the *Helms* court sua sponte certified its summary judgment order for interlocutory appeal to the Eleventh Circuit.  *Id*. at 1224.

The *Helms* court subsequently denied class certification. *Helms v. ConsumerInfo.com, Inc.*, 236 F.R.D. 561, 567-70 (N.D. Ala. 2005). Then, the Eleventh Circuit granted CIC's request for interlocutory appeal on the summary judgment.  After completion of appellate briefing, the parties reached a tentative agreement on the settlement that is the subject of the instant motion, and the Eleventh Circuit proceedings were stayed.

**United States District Court**
For the Northern District of California

B.      The *Browning* Litigation

In the meantime, in April 2004, Chuck Browning had filed this putative nationwide class action against Yahoo! Inc. alleging the same claims, noted above, that were pled in *Helms*.[1]  Then, after the denial of class certification in *Helms*, Browning sought leave to file a Second Amended Complaint to add CIC and the Experian Entities[2] ("Experian") as defendants in his case.  He alleged that Yahoo! and the prospective new defendants were intertwined business entities: Experian is CIC's parent corporation; CIC provided the Credit Manager product to Yahoo!; and the three parties maintained a "prominent co-branded partnership" in providing the products or services which allegedly violated CROA.  Although this Court granted the motion to amend, in doing so it wrote that it was "skeptical about whether plaintiff will be able to satisfy it that he can maintain a class action here against CIC — particularly where he admittedly seeks to revisit the earlier denial of class certification against CIC in Alabama."

//

**IV.    DISCUSSION**

A.      Jurisdiction

This Court has jurisdiction over the claims the members of the class asserted in this proceeding, personal jurisdiction over the settling parties (including all class members), and subject matter jurisdiction to approve the Amended Settlement.

B.      Class Definition and Scope of Release[3]

1.      <u>Class Definition</u>

The parties agreed to the certification of a settlement class generally defined as people in the United States who, between June 17, 1998 and December 27, 2006, entered into an agreement over the Internet with the Defendants to purchase one of certain enumerated credit-monitoring or

---

[1] Browning is represented in this case by plaintiff's counsel in *Helms*: Lowe & Grammas LLP (formerly Lowe, Grammas, Hitson & Dana LLP).

[2] The term "Experian Entities" shall mean Experian North America, Inc. and any company that is a subsidiary, parent, corporate affiliate or division of Experian North America, Inc., and shall also include Credit Expert, LLC.

[3] For full text of the class definition and release, *see* the Amended Settlement Agreement (Docket No. 132-2) or Part VIII, Nos. 4-5 of this order.

credit score products.  This definition is subject to exclusions based on people with a relationship to the Defendants or this case, and people who validly excluded themselves as set forth below.

*Timely Exclusions:* The Settlement Administrator received 1,183 timely exclusion requests from class members.  See Keough Supp. Aff., (Docket No. 196).  These individuals have properly excluded themselves from the settlement class, and neither this Order nor the Final Judgment shall be binding upon them.  The Clerk of the Court is directed to maintain, for five years, the record of class members who have timely excluded themselves and to provide a certified copy of such records to the Defendants, at their expense.

*Untimely Exclusions:* As of October 5, 2007, nine class members had made untimely requests for exclusion.  *Id*.  Each of these nine persons are thus settlement class members and bound by this order and the Final Judgment.[4]

2.   Scope of the Release

The parties agreed to a release of CROA claims and of claims where their stated basis is about improvement of a consumer's credit record, history, or rating.   At the insistence of the Court, this release was written to limit its scope to the claims raised in this litigation.

---

[4]  Class members marked as "late" in Exhibit 1 of Keough Second Supp. Aff., did not file timely exclusions.  (*See* Docket Nos. 196, 197).  This list includes:

| No. 1184 | Sergey Golod (WA) | No. 1189 | Keishana White (IN) |
| No. 1185 | Lisa Mace (NC) | No. 1190 | Sally Barnhill (OH) |
| No. 1186 | Charles Patrick (TN) | No. 1191 | Susan Shelton (TX) |
| No. 1187 | Teresa Crook (GA) | No. 1192 | Matthew Maurer (PA) |
| No. 1188 | Carmelita VazQuez (PA) | | |

Any additional late exclusions submitted to the Settlement Administrator, who are not identified by name in Exhibit 1, also remain in the class.

C.      Relief Offered in the Settlement

The Court approves of the multifaceted relief offered to the class members in this settlement.  Defendants have agreed to remedial relief, in-kind relief and are responsible for payment of certain litigation costs.

1.      Remedial Relief

CIC and Experian agree to specific deletions to or modifications of language on particular websites.  CIC further agrees not to make certain statements in selling credit scores or credit monitoring to Internet consumers.  The Yahoo! product at issue is no longer offered.

The changes to language on the website address the unique CROA claims asserted by Plaintiff.  Such relief is intended to change or remove language which suggested to consumers that their purchase of Defendants' products or services could result in the improvement of their credit rating or history.  For example, language such as, "you get personalized tips and analysis and learn how to boost your credit rating" and "get on the road to good credit" will be changed to "you get information regarding factors that affect a credit score" and "get on the road to credit knowledge," respectively.   Statements like "increase your purchasing power" and "find and dispute mistakes that could be hurting your credit rating" will be deleted.

2.      In-Kind Relief

Defendants are also offering in-kind relief, providing each eligible settlement class member with the choice of either a free Experian credit score (retail value of $5.00 at the time of settlement) or two months of free credit monitoring (retail value of $9.95 per month at the time of the settlement).  Because the settlement class consists of consumers who previously purchased similar products or services, class members are likely to be interested in such relief.

The credit score will be based on batched process and on the settlement class member's Experian credit report.  Each settlement class member electing the credit-monitoring benefit will be enrolled in credit monitoring and thereafter automatically charged the then-applicable rate unless the member affirmatively cancels enrollment (any time after submitting the benefit code) prior to the expiration of the 60-day, settlement-benefit period.

### 3.  Attorney's Fees, Class Notice, and Settlement Administration

As explained in Part VII of this order, Defendants will be paying a $2.55 million award of attorney's fees and expenses.  They will also bear the costs of providing class notice and of administering the settlement.  Although Defendants have not quantified such costs here, significant resources were expended to notify the 14 million class members.[5]

### D.  Notice to the Class and Governmental Entities

#### 1.  Notice to Governmental Entities

At the Court's direction, Defendants sent notice that would satisfy the Class Action Fairness Act of 2005 ("CAFA").[6]  Such notice was directed to the United States Attorney General, to the attorneys general in all 50 states and the District of Columbia, and to 11 other state agencies that specifically monitor the credit industry.  28 U.S.C. § 1715(b).  Notice was also provided to the Federal Trade Commission, the agency charged with enforcing CROA.

#### 2.  Notice to the Class

Defendants and the Settlement Administrator implemented the approved four-part notice program within the Court's deadlines.  See Keough Affs., (Docket No. 139, 141, 142).  To effect notice, they:  (1) established an official settlement website which posted the Long-Form Notice and other settlement documents; (2) emailed notice to more than 14 million tentative class members identified from consumer records; (3) mailed the Long-Form Notice to more than 3.9 million tentative class members whose email notice was undeliverable or where no email address could be located; and (4) published notice in one daily and in one weekend issue of the national edition of USA Today.

Email notice was particularly suitable in this case, where settlement class members' claims arise from their visits to Defendants' Internet websites.  *See, e.g. Lundell v. Dell, Inc.*, 2006 WL

---

[5] Cost of notice and settlement administration in similar case involving class of 6.6. million - with same settlement administrator - estimated to exceed $1,000,000. *Hillis v. Equifax Consumer Services, Inc.,* 2007 WL 1953464, at *5  (N.D.Ga.).

[6] The Court ordered this notice even though at the time there was no clear authority as to whether CAFA retroactively applied to cases filed prior to 2005.

**United States District Court**
For the Northern District of California

3507938, at *1 (N.D. Cal. Dec. 5, 2006).  The Court reviewed and approved these notices before they were disseminated and found that they were written in plain language.

The Court concludes that the notice was reasonably calculated under the circumstances to apprise the settlement class of the pendency of this action, all material elements of the Amended Settlement, and the opportunity for settlement class members to exclude themselves from, or object to, or comment on the settlement and to appear at the Final Fairness Hearing on their own behalf or through counsel.  This notice program satisfied both Federal Rule of Civil Procedure 23(c)(2)(B) (certification notice requires "best notice practicable under the circumstances") and Rule 23(e)(1)(B) (settlement notice must be directed "in a reasonable manner to all members who would be bound").[7]  It also properly informed class members of the amount of attorney's fees requested by Class Counsel as required by Federal Rule of Civil Procedure 23(h)(1).  Notice given was due, adequate, and sufficient.  It complied with the Federal Rules of Civil Procedure, due process, and any other applicable rules of the court.

//

## V.    OBJECTIONS TO SETTLEMENT

There were 139 objectors to the settlement, some of whom appeared through counsel at the Final Fairness Hearing.[8]  Even though some objectors failed to provide certain identifying information about themselves as required by the Preliminary Approval Order, the Court denied Plaintiff's motion to strike those objections and considered them as well at the hearing.

The objections fall into the following six categories:  (1) objections to the benefits offered, (2) objections to the notice, (3) objections to the requested amount of attorney's fees, (4) objections to the scope of the release, and (5) irrelevant or incomprehensible objections.

---

[7] In class-action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards.  *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.31 (4th ed. 2005).

[8] *See* Keough Aff. and Supp. Aff., (Docket Nos. 167, 196); Edward F. Siegel represented objectors Richard Oster, Jeff Heinrich and Norman Palmer.  Attorney J. Garrett Kendrick appeared for Joshua Hazan.  Objectors Rodney Ashburn and Aron Noelle Griffis appeared through attorney John W. Davis. Attorney Lawrence W. Schonbrun represented Marty Evans and Michael Weiss.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

A.      Objections to Benefits Offered

1.      Objections to the In-Kind Relief

Some objectors protest that the in-kind relief has little value.  However, the credit score and credit monitoring benefits are likely to have some value to this class, which consists of individuals who previously purchased Defendants' credit score or credit monitoring products.  The Court has been informed that the credit score will provide a numerical score that informs a class member where his or her credit standing falls in a range as compared with other consumers.  This information is valuable for anyone interested in keeping up with his or her personal finances, not only those planning a major purchase.  Finally, and perhaps most importantly, these objections do not sufficiently consider the value of the remedial relief offered or the considerable risks involved with continued litigation.

Some objectors complained that the Amended Settlement is a "coupon settlement" [9] or that the benefits are not transferable on a secondary market.  However, the in-kind relief offered in this case is not a "coupon settlement" because it does not require class members to spend money in order to realize the settlement benefit.  Further, the objectors cite no controlling authority requiring an in-kind benefit to be transferable.  Transferability is typically offered in order to avoid the criticism that the class members must spend money to obtain a benefit, which is not the case here. The question is not whether a better benefit could theoretically be provided, but whether the settlement is "fair, adequate and free from collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Finally, some objectors complain that they should get a full cash refund.  This is tantamount to complaining that the settlement should be "better," which is not a valid objection.  *Id.* at 1027.  It also fails to recognize that settlement, as a product of compromise, typically offers less than a full recovery.  *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

---

[9] Raymond Cooper was among the putative class members who primarily objected to this settlement as a "coupon" settlement. (Docket No. 143).  However, Cooper also excluded himself from the class.  (Docket No. 167).  In any event, all of his objections were raised by other class members and accordingly considered.

1    Such objections fail to consider the limited nature of the class release and the vulnerability and risk

2    of proceeding with the case on the merits.

3            The Court concludes that the relief afforded to class members, although modest, is

4    appropriate and valuable given the circumstances.

5                        2.      Objections to the Automatic-Renewal Element

6            Some settlement class members object to the automatic-renewal element of the

7    credit-monitoring benefit.  The Court has already found that this automatic-renewal element, also

8    called a negative option, was fairly and reasonably disclosed.[10]  The disclosure of automatic

9    renewal will also be repeated when settlement class members go to the website to choose and

10   obtain their settlement benefit.

11           The objectors did not address the adequacy of disclosure, but rather speculated that some

12   consumers might forget to cancel or have difficulty in cancelling.  Although the Court appreciates

13   this concern, such speculation is not a basis for denying approval of an otherwise fair and

14   reasonable settlement.  Weight is given to the fact that settlement class members are not required to

15   accept automatic renewal to receive a settlement benefit.  Members may avoid it by choosing the

16   credit score benefit or by cancelling credit-monitoring within the 60-day benefit period.  The

17   presence of the negative option has been weighed in the context of the other aspects of the

18   settlement, and in that context, it is fair, reasonable and adequate.

19                        3.      Objections to the Claims Process

20           Some objectors complain about the two-step process for obtaining a settlement benefit.

21   First, the class member selects a benefit by completing a registration form that can be submitted

22   online or mailed to the Settlement Administrator (Garden City Group).  After completing this step,

23   the Settlement Administrator will email the class member a benefit code.  Then, the class member

24   must enter this code on a CIC website.  After the code is submitted, the consumer will receive the

25   chosen settlement benefit from CIC.

26

27   _____

28       [10] The notices explain how a class member who chooses the credit monitoring benefit
     may cancel membership to avoid automatic renewal.  All of the notices included on the first
     page (in bold, 14-point type) plain language disclosing the automatic-renewal.

United States District Court
For the Northern District of California

1     Objectors complain that the two-step aspect of the process is burdensome, that the claims

2     process requires technical acumen, and that obtaining a benefit requires the class member to

3     provide identifying information.  None of these arguments are persuasive.  Only the Settlement

4     Administrator has the resources to handle step one.  Only the Defendants have the technology (and

5     the sensitive personal information about each class member) to perform step two.  Class members

6     have all demonstrated their ability to navigate the Internet through past dealings with Defendants.

7     Finally, if the Defendants did not ask (over a secure site) for personal identifying information about

8     a class member, it could not match up the member with the corresponding credit information.  The

9     objections to the claims process thus fail.

10

11     B.     Objections to Notice

12     A few objectors say that class members may have been reluctant, after receiving the e-mail

13     inviting them to visit the settlement website, to actually click on the site.  Such claimed reluctance

14     was due to concern that the email notice was an Internet "phishing" scam.[11]  The objectors present

15     anecdotal evidence that some class members sought advice from online technical or consumer

16     protection forums to address these concerns. There, many were told it was probably an internet

17     identity theft scam and were advised to delete the e-mail without visiting the website.  (*See* Docket

18     No. 184).  Supposedly, this may have been so, even though visiting the settlement website did not

19     require an individual to divulge personal identifying data.

20     Class Counsel respond that the email notice was designed with the intent to maximize the

21     number of notice recipients.  The long form of the notice was intentionally not included in the email

22     over concern that it would trigger spam filters.  The decision was thus made to place the long form

23     of the notice on a website and to use the email to provide brief notice and to direct interested class

24     members to the website.  Counsel also note that the phone number listed on the website as well as

25     the inclusion of identifying information about the case were mechanisms for class members to

26     verify the legitimacy of the notice.

27

28     _____

[11] A phishing scam involves Internet "fraudsters" who send spam or pop-up electronic messages to lure personal information from unsuspecting victims. *See* FTC Consumer Alert, *available at,* www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt127.shtm

United States District Court

For the Northern District of California

1    The Court acknowledges evidence indicating that some number of class members may

2    have deleted the email notice out of concern that it was an identity theft scam.  However, no

3    objector has presented evidence of how widespread this concern was throughout the class.  There

4    are tradeoffs involved in any form of notice, especially with a settlement class of this size.  For

5    approval, the notice need not have been perfect.  Rather, it needed to be the "best notice practicable

6    under the circumstances" and directed "in a reasonable manner to all members who would be

7    bound."  Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1)(B).  The email notice program

8    adopted in this case met these requirements.

9

10    **C.    Objections to the Requested Attorney's Fees**

11    The objections to the attorney's fees largely consisted of vague objections to the amount

12    sought and to claims that the fees were not sufficiently tied to the benefits.  These objections are

13    fully addressed in Part VII of this order and dismissed.  That analysis is adopted here.

14

15    **D.    Objections to the Scope of the Release**

16    Some objectors assert that the release is too broad.[12]  The Court is satisfied that this is not

17    so.  The earlier, more expansive, versions of the release were rejected by this Court.  The release

18    language, as approved here, does not purport to release all claims based on class members' purchase

19    of credit monitoring or credit scores.  Rather, it is intended to release only the claims raised in this

20    litigation and is approved by the Court in reliance on Defendants' representation that no other

21    putative (or certified) class actions alleging CROA violations are pending against any Defendant.

22    (Docket No. 194).  After such considerations, the Court finds the release to be fair and reasonable.

23

24

25

26

27

28    [12] Although, broad releases are sometimes approved in class action settlements. *See Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).  Note that an even broader release was recently approved in a similar case.  *Hillis*, 2007 WL 1953464, at *12.

E.     Irrelevant or Incomprehensible Objections

      1.     <u>Incomprehensible Objections</u>

Roughly 10% of the objection letters were incomprehensible. The very nature of these objections makes it impossible for the Court to address them, but such objections are to be expected from a settlement class including 14 million people.  These objections are overruled.

      2.     <u>Irrelevant Objections</u>

          a.     Objections About a Class Member's Particular Credit Report

Another 10% of the class members who objected complained, not about the class settlement, but about alleged errors in the class member's own particular credit report.  For instance, some class members complained that a lender's tradeline included an incorrect balance, or that a particular line of credit should no longer be reported.  Such objections are irrelevant to the determination of whether the settlement should be finally approved.

          b.     Objections About Original Purchase of Product or Service

Another group of class members objected not to the automatic-renewal element of this settlement, but to the automatic renewal of their original purchases of Defendants' products.  In those transactions, consumers who signed up for a trial membership in credit monitoring received it initially at no charge.  If the consumer did not cancel the service within the trial period, the service continued and the consumer was thereafter charged.  These objections are irrelevant to the allegations of CROA liability in this lawsuit and to the extent that such objections are relevant, they have been addressed above in Part V, Section A2.

          c.     Objections about invalid "free credit report" settlements

Objector Joshua Hazan objected to the provision of a "free credit report" as a settlement benefit, citing *Acosta v. Trans Union, LLC*, 240 F.R.D. 564, 573 (C.D. Cal. 2007) [superseded by, 243 F.R.D. 377, 390].  This objection is misplaced because this settlement does not offer a free credit *report* as a settlement benefit — it offers a credit *score* or credit monitoring.  Although federal law entitles an individual to a free annual credit report from Experian, there is no law requiring free credit scores or monitoring.

These matters are irrelevant to the current proceeding and are, therefore, overruled.

The objections give scant, if any, recognition to the significant hurdles faced by the Plaintiff and the class on the merits of the CROA claim, or on the risk, expense, complexity and likely duration of further litigation.  In particular, and despite an express invitation from the Court, no objector ever addressed whether a class could or should be certified here for trial purposes given the failure to obtain certification in *Helms*.  The few objections that purport to consider the viability of Plaintiff's claim either do so in a conclusory manner, or paint an unreasonably rosy picture of the prospects of success for this class.  Plaintiff would likely face serious difficulty obtaining superior benefits through litigation than those conferred by the Amended Settlement.  Accordingly, all objections which have been submitted have been considered by the Court and are OVERRULED.

//

//

## VI.    MOTION FOR FINAL APPROVAL

### A.    Final Certification of Settlement Class

In order to certify a settlement class, the requirements of Rule 23 must generally be satisfied and each are considered here.  *See Hanlon*, 150 F.3d at 1019 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  In assessing Rule 23 requirements in the settlement context, a "court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.

#### 1.    The Requirements of Rule 23(a)

For certification of a settlement class, Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  In granting preliminary approval, this Court held that the requirements of Rule 23(a) were satisfied and that the "tentative settlement class is superior to individual lawsuits."  The *Helms* court, under nearly identical circumstances, also found that they were met.  *Helms*, 236 F.R.D. at 564-67.

**Numerosity.**  The class of approximately 14 million individuals is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1); *see Hanlon*, 150 F.3d at 1019.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Commonality.** Further, this case involves common issues of fact and law for the class arising out of the construction and application of CROA to the Defendants and their services and products. Fed. R. Civ. P. 23(a)(2).

**Typicality.** The claims of the named Plaintiff are typical of the settlement class, and depend for their resolution on the construction and application of CROA to the Defendants and their services and products. Fed. R. Civ. P. 23(a)(3).

**Adequacy.** And finally, with respect to legal adequacy, two questions must be resolved: (1) do the named plaintiff and his or her counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and plaintiff's counsel vigorously prosecute the action on behalf of the class? *Hanlon*, 150 F.3d at 1020. Here, Browning and Class Counsel do not have any conflicts of interest with the class members. Importantly, the settlement makes all class members eligible for the same relief. *Id*. at 1021. Furthermore, Class Counsel vigorously pursued the class claims through extended litigation in *Helms*, followed by successfully obtaining leave of court to add CIC and Experian to this class action after certification was denied in *Helms*. As such, the named Plaintiff and counsel have fairly and adequately protected class interests. Fed. R. Civ. P. 23(a)(4).

2.     Requirements of Rule 23(b)(3)

For certification under Rule 23(b)(3), a class action must meet two more requirements: (1) common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods of fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615; Fed. R. Civ. P. 23(b)(3).

**Predominance.** In this case (and as the *Helms* court found), questions of law or fact common to members of the settlement class concerning the application and construction of CROA predominate over any questions affecting only individual members.

**Superiority.** It was this requirement which caused the *Helms* court to deny class certification. That court reasoned that class litigation would not be a superior method of adjudication when damages, if aggregated by the class trial procedure, could be "grossly

15

United States District Court

For the Northern District of California

1    disproportionate to the conduct at issue." *Helms*, 236 F.R.D. at 564-68.[13]  However, this reasoning

2    does not apply here because the appropriate relief is agreed upon by the parties.  Moreover, a

3    settlement class need not be "manageable" as a trial class action because no trial will occur.

4    *Amchem*, 521 U.S. at 619.  This Court determined in its Preliminary Approval Order that the

5    requirements of Rule 23(b)(3) had been met, and the objectors do not suggest otherwise.

6         Finding the requirements of Rule 23(a) and Rule 23(b)(3) satisfied, the Court confirms and

7    finally approves the settlement class certification.

8

9         **B.    Final Approval of Settlement**

10        This Court may approve the class action settlement after hearing and upon a finding that

11   the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  Therefore, the

12   question is "not whether the final product could be prettier, smarter, or snazzier, but whether it is

13   fair, adequate, and free from collusion."  *Hanlon*, 150 F.3d at 1027.  It is "the settlement taken as a

14   whole ... that must be examined for overall fairness." *Id*. at 1026.

15        A settlement under Rule 23(e) requires that the Court balance a number of factors,

16   including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

17   duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the

18   amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views

19   of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

20   members to the proposed settlement.  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

21   2004).  Courts also consider (9) the absence of collusion in the settlement process. *Id.*

22        **1.    The Strength of Plaintiff's Case**

23        In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement -

24   particularly those which go to fundamental legal issues - favor approval.  *See Glass v. UBS Fin.*

25   *Servs., Inc.*, 2007 WL 221862, at *3 (N.D. Cal. 2007).  Here, there is uncertainty as to whether

26

27   ─────────────────────

28        [13] It noted that the violation was at most, a technical violation of a complex statutory
     scheme and that "[t]he damages resulting would be devastating and largely out of proportion
     with the culpability of defendant's conduct."  *Helms*, 236 F.R.D. at 569.

1  Defendants fall within CROA's definition of a "credit repair organization."[14]  Because Plaintiff's

2  allegations are based on CROA's provisions regulating "credit repair organizations," the question of

3  whether Defendants are within that definition is crucial to whether CROA's regulations apply to

4  Defendants.  Furthermore, Plaintiff's case was weakened by other *Helms* court decisions.  The

5  summary judgment order undermined the CROA fraud allegations and the denial of class

6  certification would be a particularly difficult hurdle to moving forward with this litigation.  This

7  level of uncertainty weighs heavily in favor of approval.

8       **2.       Risk, Expense, Complexity, and Likely Duration of Future Litigation**

9       As previously noted, further litigation carries a risk that the appellate courts will ultimately

10  adopt an interpretation of CROA adverse to the class.  *See Hillis*, 237 F.R.D. at 516-17; *Helms v.*

11  *ConsumerInfo.com, Inc.*, No. 05-13335-W (11th Cir. Jan. 24, 2006).  Should this Court (or the

12  Ninth Circuit on appeal) adopt such an interpretation, the class' CROA claims will be extinguished

13  and the class would receive no recovery for those claims.

14       If this settlement is not approved, further litigation before this Court would be time

15  consuming, complex and expensive.  The Court reasonably anticipates a motion for class

16  certification and competing motions for summary judgment centered upon competing

17  interpretations of CROA.  Regardless of how this Court might have ruled on the merits of the legal

18  issues, its decisions would almost certainly be met by one party with an appeal, and the parties

19  would have faced the expense, delays and uncertainties inherent in litigating an appeal.  While

20  litigating in this Court, counsel would also be dealing with the currently stayed appeal in the

21  Eleventh Circuit.  Accordingly, this factor supports approval of the Amended Settlement.

22       **3.       Risk to Maintaining Class Action Status Throughout Trial**

23       When Class Counsel were denied class certification on behalf of a similar class in *Helms*,

24  they sought leave of this Court to file a Second Amended Complaint naming CIC and Experian as

25

26       [14] Two district courts in the Eleventh Circuit reached contrary conclusions on this
    legal issue.  *Helms*, 436 F. Supp. 2d at 1238 (finding that CIC fell within the definition, but
27  certifying ruling for interlocutory appeal); *Hillis v. Equifax Consumer Servs., Inc.*, 237
    F.R.D. 491, 513-517 (N.D. Ga. 2006) (decided after *Helms*, with similar CROA claims
28  against similar defendant; finding as a matter of law that plaintiff failed to show defendant
    was a credit repair organization; the case then settled).

United States District Court

For the Northern District of California

defendants.  In granting that motion, this Court stated it was "skeptical" that a trial class could be certified.  It again noted its skepticism when granting preliminary approval. Developments in the law since the filing of the Second Amended Complaint further underscore the risk that class certification for trial would not have been obtained.  Notwithstanding this, Class Counsel was able to negotiate a settlement that provides a benefit to approximately 14 million consumers and, through the remedial relief, to the general public as well.

For the reasons stated, there is a substantial risk that Plaintiff would not be able to obtain and maintain class certification.  This factor weighs in favor of approval.

### 4.  <u>Amount Offered</u>

In considering the amount offered in the settlement, the Court may also look at the difficulties Plaintiff would have in proceeding with litigation.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The benefits offered were discussed in Part IV, Section C.

The Court finds that the consideration offered here — remedial and in-kind relief plus additional expenses incurred by Defendants — is adequate to support the proposed settlement, given the uncertainty of Plaintiff's legal claims under CROA, coupled with denial of class certification in other, similar district court cases.  The amount offered provides the class with a greater recovery than it would likely achieve through litigation, and does so in a more expedient and certain manner.  This factor weighs in favor of approving the Amended Settlement.

### 5.  <u>Extent of Discovery Completed and Stage of Proceedings</u>

In assessing this factor, it is appropriate to consider the antecedent to this case, *Helms*, given the agreement of the parties that the discovery from *Helms* applied in *Browning*.

*Helms* was filed in 2003 and was litigated for more than two years, with both parties conducting depositions, answering interrogatories, and responding to document requests.  During discovery, CIC reportedly produced millions of emails, tens of thousands of documents, and more than 100,000 recordings of phone calls.  The parties filed competing motions for summary judgment which were resolved by the court.  Eventually, the district court denied class certification. On the issue of whether Defendants were subject to CROA, the parties completed appellate briefing before the Eleventh Circuit.

*Browning* was filed against Yahoo! in 2004.  It, too, has involved discovery and motion practice, including a motion to dismiss by Yahoo! and the aforementioned motion to add two additional defendants.  Furthermore, this Court has exercised considerable scrutiny over the settlement, issuing several interim orders in response to the parties' initial proposed settlement.

Finally, the parties engaged in multiple rounds of mediation.  As a result, the parties and this Court are well positioned to assess the strength of this case and the comparative benefits of the proposed settlement.  *See Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).  Accordingly, this factor weighs in favor of approving the Amended Settlement.

### 6.   Experience and Views of Counsel

The settlement is the product of arm's length negotiations that were conducted by counsel who are experienced in class action litigation.  Counsel for both sides believe that the Amended Settlement reflects the relative strengths and weaknesses of the parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation.

Moreover, the settlement was the product of mediation by a qualified and experienced lawyer, Rodney A. Max,[15] who reported that the case was "professionally, ethically, and reasonably mediated, negotiated and resolved."  Max Aff., (Docket No. 132-7). The mediator recommended the settlement to the Court as being "fair, reasonable, and adequate." *Id*.

The experience and views of counsel weigh in favor of approval.

### 7.   Presence of Governmental Participant

The court, in requiring CAFA notice to be sent to various governmental entities,[16] intended to provide an opportunity for comment or objection by such entities.  Defendants provided a thorough case history and kept these entities informed of the developments in the case.  However, no governmental entity sought to participate in the settlement proceedings by objection or comment.  *See* Keough Aff., (Docket No. 167).

---

[15] Max is an Alabama lawyer and mediator who has practiced law for over 30 years and who has, for the past ten years, focused his practice on the mediation of hundreds of complex civil cases in 26 states and the District of Columbia.

[16] For details, *see* Part IV, Section D1.

United States District Court

For the Northern District of California

19

1   The fact that the agency responsible for CROA enforcement - the FTC - did not object to

2   the settlement is significant.   CIC and the FTC previously entered into a consent decree which

3   required CIC to make certain disclosures in connection with its negative option marketing.[17]  Given

4   this history, the Court's preliminary approval order specifically addressed the negative option

5   feature of this settlement.  That order noted this Court's belief that offering a choice of settlement

6   benefits — one of which did not have the negative option — avoided the potential problems cited

7   by the FTC in its opposition to a negative option in a class action settlement.  *See Chavez v. Netflix,*

8   *Inc.*, No. CGC-04-434884 (Cal. Super. Ct. October 27, 2005).  As evidenced by that case, the FTC

9   has previously objected where it believed a negative option in a settlement was either inadequately

10  disclosed or inappropriately structured.

11  Because numerous governmental agencies (including the FTC) were given notice of the

12  settlement and have not objected, this factor weighs in favor of the settlement.

13  **8.     Reaction of Class Members to Proposed Settlement**

14  The next factor that the court must consider is the reaction of the class to the proposed

15  settlement.  *Hanlon*, 150 F.3d at 1026.  Of the 14 million settlement class members who were sent

16  notice, 139 objected to the Amended Settlement.  See Keough Aff. and Supp. Aff., (Docket Nos.

17  167, 196).  Statistically, this indicates that there was 1 objector for every 100,720 class members.

18  This objection rate is low, even compared to objection rates in other, similar class action

19  settlements.[18]    The relatively low percentage of objectors weighs in favor of approval.

20  **9.     Absence of Collusion in Settlement Process**

21  Finally, this court should satisfy itself that the settlement was not the product of collusion.

22  *See Young*, 2007 WL 951821, at *3.  Here, the original proposed settlement was the product of

23  mediation arising out of *Helms* and settlement negotiations covering both *Helms* and *Browning*.

24  Max Aff., (Docket No. 132-7).  This negotiation process spanned more than a year.

25

26

27  [17] *See FTC v. ConsumerInfo.com*, No. CV SACV 05-801 AHS (MLGx), Stip. Final J.
(C.D. Cal. Aug. 15, 2005).

28  [18] *See, e.g.*, *Glass*, 2007 WL 221862, at *5 (approving a settlement with 8 objectors in
a class of 13,176, an objection rate of 1 objector for every 1,647 class members).

United States District Court

For the Northern District of California

1    The initial mediation was discontinued because the parties could not reach agreement.  The

2    Eleventh Circuit ordered the case to a second mediation.  The mediator reported that these

3    negotiations were contentious, with the parties staking out aggressive positions.  *Id.* After several

4    meetings, the parties reached an agreement on the substance of the relief to be provided to the

5    settlement class.  *Id.*  Then, the negotiations broke off for a second time when the parties were

6    unable to agree on attorney's fees.  *Id.*  The mediator initiated one last effort, submitting a

7    "mediator's proposal" on the attorney's fees which was ultimately accepted.  *Id.*

8    Further, the Amended Settlement was reached in accordance with this Court's interim

9    orders following the initial motion for preliminary approval of the settlement.  Accordingly, the

10   Court is satisfied that the settlement procedure was without collusion.  This factor weighs in favor

11   of approving the Amended Settlement.

12   Approval of settlements in class action lawsuits is left to the "sound discretion of the trial

13   court."  *Hillis,* 2007 WL 1953464, at * 9.  After consideration of the above factors and because

14   public and judicial policies strongly favor settlement of class action law suits, *id.* at * 9, the Court

15   GRANTS the joint motion for final approval of the Amended Settlement.   On balance, the

16   settlement is fair, reasonable and adequate, was determined without fraud or collusion, and is in the

17   best interests of the settlement class.

18   *//*

19   **VII.   MOTION FOR ATTORNEY'S FEES AND EXPENSES**

20   Also before the Court is Class Counsel's Motion for Award of Attorney's Fees and

21   Reimbursement of Expenses. (Docket No. 176).  The motion seeks, and CIC and Experian have

22   agreed to pay, $2.55 million for Class Counsel's attorney's fees and expenses.  This figure was

23   proposed by the mediator.  Max Aff., (Docket No. 132-7).  Class Counsel contend that their fee

24   request is appropriate under both a lodestar and percentage-of-the-fund analysis.

25   ***Lodestar Comparison:*** The motion for Attorney's Fees is supported with declarations and

26   detailed records showing that 4,798.7 hours were spent on the litigation (*Helms* and *Browning*) and

27   giving a full breakdown of expenses.  The lodestar amount during this period for attorney time

28   calculated at prevailing market rates is $2,688,647.50.  The market rates utilized, the hours

21

United States District Court

For the Northern District of California

1   expended, and the expenses incurred appear reasonable and appropriate.  Class Counsel's request of

2   $2.55 million, which includes expenses of $47,642.86, is below the lodestar without including the

3   multipliers that typically increase the award of attorney's fees to plaintiffs' attorneys in class action

4   settlements with a risky outcome if litigated to conclusion.

5        ***Percentage-of-Recovery Comparison:*** The reasonableness of the requested fee and the

6   lodestar analysis are further supported by a percentage-of-recovery analysis.[19]  To begin the

7   analysis, the Court concludes that $35 million[20] is one possible estimate of the total monetary

8   benefit created to the class based on the in-kind relief.  The $2.55 million requested in attorney's

9   fees and expenses therefore represents approximately 7.3% of this estimated total benefit, falling

10  within the 25% benchmark applied in the Ninth Circuit.  *Vizcaino v. Microsoft Corp.,* 290 F.3d at

11  1043, 1047 (9th Cir. 2002), *cert denied sub nom. Vizcaino v. Waite,* 537 U.S. 1018 (2002).

12       As such, the fee request is reasonable, given the length, novelty and complexity of the

13  litigation, the quality of representation, the risk of nonpayment, the time and labor required, the

14  benefits obtained for the class through the settlement, multipliers applied in similar cases, and the

15  comparisons to a lodestar and percentage-of-recovery analysis.  The motion for an award of

16  attorney's fees of $2.55 million (inclusive of $47,642.86 in litigation expenses) is GRANTED.  The

17  award shall be paid in accordance with the terms of the Amended Settlement.

18  //

19  **VIII.        CONCLUSION**

20       1.      The Court designates Chuck Browning as the class representative, and E. Clayton

21  Lowe, Jr. and Peter A. Grammas as Class Counsel.

22

---

23       [19] Objectors dispute the application of a percentage-of-recovery analysis because it
24  does not take into account actual redemption rates.  Class Counsel maintain that attorney's
    fees may be based on the projected total amount of benefit created.  *Williams v. MGM-Pathe
    Communications Co.*, 129 F.3d 1026 (9th Cir. 1997)*; Young*, 2007 WL 951821, at *8.  The
25  objectors correctly distinguish the cases cited by Class Counsel as common fund cases.  But,
    because this analysis is applied for the limited purpose of confirming the reasonableness of
26  the requested fee and lodestar amount, the authority is sufficiently analogous.

27       [20] Determined by multiplying the retail value of the credit score ($5.00) by half
    of the number of class members (7 million).  Some class members would presumably
28  choose the benefit of two months free credit-monitoring ($9.95 per month).  This
    estimate does not include the additional benefit derived from the remedial relief.

2.	Plaintiff's motion for attorney's fees and expenses is granted.  *See* Part VII.

3.	The Amended Settlement Agreement is expressly incorporated herein by this reference, and the Court directs the parties to implement it.

4.	The applicable requirements of Federal Rule of Civil Procedure 23 having been satisfied, the settlement class is finally certified as all natural persons in the United States who:

> between June 17, 1998 and December 27, 2006, entered into an agreement over the internet with [CIC] or any Experian Entity to purchase any **Credit Check or Credit Monitoring (which were formerly known as CreditCheck® Monitoring Service), Credit Manager (including Yahoo! Credit Manager), Triple Alert, or Triple Advantage credit-monitoring product (and/or any credit score sold on a website also selling any of the foregoing credit monitoring products)**[21] and paid [CIC] or any Experian Entity for that credit-monitoring product (and/or such a credit score) but did not later obtain complete refunds from any source of the full amount paid for that credit-monitoring product (and/or credit score).

A full opportunity having been afforded to class members to participate in the Final Fairness Hearing and all objectors having been heard, all settlement class members who have not timely excluded themselves are bound by this Order and the Final Judgment.

Those individuals who timely excluded themselves are not part of the settlement class. Also excluded are Defendants' officers, directors, and employees; Defendants' and Plaintiff's attorneys; Magistrate Judge Lloyd and the members of his immediate family; anyone who enrolled in credit monitoring pursuant to a free trial offer but never became a paying member of the credit-monitoring program; and anyone who was a named plaintiff (as opposed to a putative class member) in a lawsuit pending against any defendant as of December 26, 2006.

5.	Upon the Effective Date (i.e., the date when all appellate rights with respect to this order and the Final Judgment are exhausted):

> 1.	the Released Defendants[22] shall forever be released and discharged from any and all legal or equitable claims ... that the named Plaintiff and settlement class members ("the *Browning* class") had based on any Released Party's violation of [CROA]; and

---

[21] Bold language hereinafter "the enumerated products and services."

[22] i.e., Defendants and their present or former officers, directors, employees, attorneys, agents, administrators, successors, assigns, subsidiaries, partners, corporate affiliates, sister corporations, parents, divisions, and predecessors.

23

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

2.      the Released Defendants shall forever be released and discharged from any and all legal or equitable claims ... that [the *Browning* class] had based on any Released Party's selling, providing or performing (or representing that such person can or will sell, provide, or perform) the service of improving a consumer's credit record, history, or rating (including providing advice or assistance to the consumer with regard to improving the consumer's credit record, history, or rating), where the stated basis of the claim is about improvement of a consumer's credit record, history, or rating; and

3.      the Released Marketing Partners or Marketing Affiliates[23] shall forever be released and discharged from any and all legal or equitable claims ... that [the *Browning* class] had based on any Released Party's violation of [CROA], insofar as and to the extent that [the Released Marketing entities] advertised, promoted, marketed, provided and/or sold [the enumerated products or services]

4.      [the Marketing Entities] shall forever be released and discharged from any and all legal or equitable claims... that [the *Browning* class] had based on any Released Party's selling, providing or performing (or representing that such party can or will sell, provide, or perform) the service of improving a consumer's credit record, history, or rating (including the service of providing advice or assistance to the consumer with regard to improving the consumer's credit record, history, or rating), where the stated basis of the claim is about improvement of a consumer's credit record, history, or rating, insofar as and to the extent that [the Released Marketing Entities] advertised, promoted, marketed, provided, and/or sold [the enumerated products or services].

All released claims refer to those arising on or before the Effective date.

6.      All objections having been overruled, and final approval to the Amended Settlement having been granted, the Second Amended Complaint shall be, and is, dismissed with prejudice.  No member of the settlement class (including his or her past, present or future agents, legal representatives, trustees, parents, estates, heirs, executors and administrators) may hereafter assert any claim, demand, action, suit or cause of action, whether class or individual, against any Released Party based in whole or in part upon any released claim.

**IT IS SO ORDERED.**

Dated: 11/16/07

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[23] i.e., any entity which (or individual who) during the class period was a defendant's marketing partner or affiliate that advertised, promoted, marketed, provided, or sold any [enumerated product or service] on a website also selling any of the foregoing credit-monitoring products (hereinafter, "Marketing Entities").

24

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

Marc Kirby Callahan mkcallahan@jonesday.com

Marc Stephen Carlson mscarlson@jonesday.com, ataylor@jonesday.com

Bryson Reid Cloon bryson@cloonlaw.com, april@cloonlaw.com,
jeaontheroad@hotmail.com

John William Davis john@johnwdavis.com

A.J. De Bartolomeo ajd@girardgibbs.com, cme@girardgibbs.com

Jerome R. Doak jrdoak@jonesday.com, cecox@jonesday.com

John W. Edwards jwedwards@jonesday.com

Gordon John Finwall Gordon@Finwalllaw.com, finwall@sbcglobal.net

Daniel C. Girard girardgibbs@girardgibbs.com, cma@girardgibbs.com

Richard Joseph Grabowski rgrabowski@jonesday.com

Peter A. Grammas pgrammas@lowegrammas.com

Robert Stephen Griffis rsglaw@bellsouth.net

Steven F. Helfand steven@stevenhelfand.com, help@stevenhelfand.com

James Garrett Kendrick jgk@private-ag.com

Clay Lowe clowe@lowegrammas.com

Lawrence William Schonbrun lschon@inreach.com

Edward Frank Siegel efsiegel@efs-law.com, efsiegel@apk.net

David Clark Zucker zuckerlaw@sbcglobal.net, dkzucker@sbcglobal.net

Michael W. Blanton
Swanson Midgley LLC, Ste. 400
2420 Pershing Rd
Kansas City, MO 64108

Darrell Palmer
Law Offices of Darrell Palmer
603 North Highway 101
Suite A
Solano Beach, CA 92075

Raymond Cooper
Post Office Box 22327
Indianapolis, IN 46222-0327

Charles M Thompson
5615 Canongate lane
Birmingham, AL 35242

Kenneth E. Nelson
Nelson Law Firm, PC
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

* Counsel are responsible for providing copies of this order to co-counsel.

United States District Court
For the Northern District of California